IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Omar Khadr, | ) | |
|     Detainee, Camp Delta, | ) | |
|     Guantánamo Bay Naval Station, | ) | |
|     Guantánamo Bay, Cuba; and | ) | |
| | ) | |
| Fatmah Elsamnah, | ) | |
|     3 Khartoum Avenue, | ) | |
|     Scarborough, | ) | |
|     Ontario, Canada, | ) | |
|     as Next Friend of Omar Khadr; | ) | |
| | ) | |
| Petitioners, | ) | **PETITION FOR WRIT** |
| | ) | **OF HABEAS CORPUS** |
|     v. | ) | No. |
| | ) | |
| GEORGE W. BUSH, | ) | |
|     President of the United States | ) | |
|     The White House | ) | |
|     1600 Pennsylvania Ave., N.W. | ) | |
|     Washington, D.C.  20500; | ) | |
| | ) | |
| DONALD RUMSFELD, | ) | |
|     Secretary, United States | ) | |
|     Department of Defense | ) | |
|     1000 Defense Pentagon | ) | |
|     Washington, D.C.  20301-1000; | ) | |
| | ) | |
| ARMY BRIG. GEN. JAY HOOD, | ) | |
|     Commander, Joint Task Force - GTMO | ) | |
|     Guantánamo Bay Naval Station | ) | |
|     Guantánamo Bay, Cuba, | ) | |
|     c/o United States Army, | ) | |
|     Army Pentagon | ) | |
|     Washington, DC 20310-0200; and | ) | |

**(continued on next page)**

W315434.1

| | |
|---|---|
| **ARMY COL. NELSON J. CANNON,** | ) |
| **Commander, Camp Delta,** | ) |
| **Guantánamo Bay Naval Station** | ) |
| **Guantánamo Bay, Cuba** | ) |
| **c/o United States Army,** | ) |
| **Army Pentagon** | ) |
| **Washington, DC 20310-0200** | ) |
| | ) |
| **Respondents.** | ) |
| **All sued in their official capacity.** | ) |

## PETITION FOR WRIT OF HABEAS CORPUS

1. Petitioner Omar Khadr ("Omar") seeks the Great Writ. He acts on his own behalf and through his Next Friend, Ms. Fatmah Elsamnah, his grandmother.

2. Omar is a Canadian citizen. He is being held virtually *incommunicado* in Respondents' unlawful custody.

3. Pursuant to either the President's authority as Commander in Chief and under the laws and usages of war or a military order issued November 13, 2001, ("the Military Order"), Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Nelson J. Cannon, Commander, Camp Delta, Guantánamo Bay Naval Station, Cuba ("Guantanamo") are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of Omar at Guantánamo.

## I
## JURISDICTION

4. Petitioners bring this action under 28 U.S.C. §§2241 and 2242, and invokes this Court's jurisdiction under 28 U.S.C. §§1331, 1350, 1651, 2201, and 2202; 5 U.S.C. §702; the Fifth, Sixth, and Eighth Amendments to the United States Constitution; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; and customary international law. Because they seek declaratory relief, Petitioners also rely on Fed.

R. Civ. P. 57.

5.  This Court is empowered under 28 U.S.C. §2241 to grant the Writ of Habeas Corpus, and to entertain the Petition filed by Fatmah Elsamnah as Next Friend under 28 U.S.C. §2242. This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. §2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. §2202, as this case involves an actual controversy within the Court's jurisdiction.

## II
## PARTIES

6.  Omar is a Canadian citizen presently incarcerated and held in Respondents' unlawful custody at Camp Delta, Guantánamo. *See* Exhibit A, Affidavit of Fatmah Elsamnah.

7.  Petitioner Fatmah Elsamnah is Omar's grandmother. She has received several messages from her grandson expressing concern over his detention. Because her grandson cannot secure access either to legal counsel or to the courts of the United States, Fatmah Elsamnah acts as his Next Friend. *See* Exhibit A, Affidavit of Fatmah Elsamnah.

8.  On her own and through Canadian Counsel, Nathan Whitling, Fatmah Elsamnah has tried repeatedly to contact her grandson, to learn more about his condition and status and to gain access to him. The United States has either rebuffed or ignored counsel's requests. The United States has provided no information either to Ms. Elsamnah or to Mr. Whitling regarding their requests for access to Omar, the date and circumstances of Omar's arrest or the specific reasons for his continued detention at Guantánamo. *See* Exhibit B, Affidavit of Nathan Whitling, Canadian Counsel for Petitioner Omar Kadhr and Fatmah Elsamnah and attachments thereto.

9.  Respondent George W. Bush is the President of the United States and Commander in Chief of the United States Military. It is pursuant to the Military Order promulgated by him or alternatively, under his authority as Commander in Chief and under the laws and usages of war that Omar is being detained. Accordingly, Respondent Bush is ultimately responsible for Petitioner's unlawful detention. He is sued in his official capacity.

10. Respondent Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to

either the November 13, 2001 Military Order or the President's authority as Commander in Chief and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining the custody and control of Omar.  He is sued in his official capacity only.

11. Respondent Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo.  He has supervisory responsibility over Omar and is sued in his official capacity only.

12. Respondent Cannon is the Commander of Camp Delta, the U.S. facility where Omar is presently held.  He is the immediate custodian responsible for Omar's detention, and is sued in his official capacity only.

## III
## STATEMENT OF FACTS

13. On information and belief, Omar is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.

14. On information and belief, Omar is not, nor has he ever been, "enemy combatants" who were "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there."  *See Hamdi v. Rumsfeld*, 542 U.S. __, slip op. at 8-9 (June 28, 2004).

15. Omar seeks to enforce his right to a judicial determination of whether there is a factual basis for Respondent's determination that he is an "enemy combatant."

16. Omar was born in September, 1986. In 1997, he moved with his family from Pakistan to Kabul, Afghanistan so that his father could seek employment there.  In November 2001, in order to avoid the bombing that was taking place in Kabul, Omar's father directed Omar and his brother to move their belongings to an orphanage outside of the city.  During this time, Omar and his brother were separated.  Omar's family learned in late 2002 that he had been arrested on July 27, 2002, when he was just 15 years old.  They learned that Omar had been transferred to the custody of the U.S. Military and transported to Guantánamo in the late fall of 2002.  *See* Exhibit A, Affidavit of Fatmah Elsamnah.  Omar has been held in United States custody at

Guantánamo since that time. *See* Exhibit A, Affidavit of Fatmah Elsamnah.

17. On information and belief, at the time of his detention, Omar was not a member of either the Taliban government armed forces or the Al Qaida armed forces, and he did not cause or attempt to cause any harm to American personnel or property prior to his capture.

### The Joint Resolution

18. In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of Respondent Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized the President to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001).

19. On information and belief, Omar: i) is not, and has never been, a member of Al Qaeda or any other terrorist group; ii) prior to his detention, did not commit any violent act against any American person or espouse any violent act against any American person or property; iii) was not involved in the ensuing armed conflict; and iv) had no involvement, direct or indirect, in either the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group. He is therefore not properly subject to the detention order issued by the President, nor is he properly subject to the Executive's authority as Commander in Chief or under the laws and usages of war.

20. On information and belief, Omar has had no military or terrorist training, nor has he at any time voluntarily joined any terrorist force.

21. Omar was not initially taken into custody by American forces. On information and belief, Omar was taken into custody against his will and handed over to the Americans. Petitioners are aware of no evidence that he engaged in combat against American forces.

22. On information and belief, Omar promptly identified himself by his correct name and

nationality to the United States and requested that the United States provide him with access to his family and to legal counsel. Omar was kept blindfolded against his will for lengthy periods while being taken involuntarily to Guantánamo. In the course of being taken to Guantánamo, Omar believes he was transported via other American territory.

## The Detention Order

23. On November 13, 2001, Respondent Bush issued a Military Order authorizing indefinite detention without due process of law. The Order authorizes Respondent Rumsfeld to detain anyone Respondent Bush has "reason to believe":

     i.     is or was a member of the organization known as al Qaida;

     ii.     has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

     iii.     has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

See Military Order of November 13, 2001. President Bush must make this determination in writing. The Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

24. The Military Order vests the President with complete discretion to identify the individuals that fall within its scope. It establishes no standards governing the use of his discretion. Once a person has been detained, the Order contains no provision for the person to be notified of the charges he may face. On the contrary, the Order authorizes detainees to be held without charges. It contains no provision for detainees to be notified of their rights under domestic and international law, and provides neither the right to counsel, nor the right to consular access. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and no provision for appeal to an Article III court. In fact, the Order illegally bars review by any court. The Order also illegally authorizes indefinite and unreviewable detention, based exclusively on the President's written determination that an

individual is subject to its terms.

25. The Military Order was promulgated in the United States and in this judicial district, the decision to detain Petitioner was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining the Petitioner was, and is, being made by Respondents in the United States and in this judicial district.

26. Respondent Bush has never certified or determined in any manner, in writing or otherwise, that Omar is subject to the Military Order.

27. Omar is not properly subject to the Military Order.

### Guantánamo Bay Naval Station

28. On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray, at the United States Naval Base, in Guantánamo Bay, Cuba. In April 2002, all prisoners were transferred to a more permanent prison facility in Guantánamo, Camp Delta.   Offenses committed by both civilians and foreign nationals living on Guantánamo are brought before federal courts on the mainland, where respondents enjoy the full panoply of Constitutional rights.  Detainees incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 542 U.S. ___, (June 28, 2004).

29. In or about the spring of 2003, the precise date unknown to counsel but known to Respondents, the United States military transferred Omar to Guantánamo, where he has been held ever since, in the custody of Respondents Bush, Rumsfeld, Hood, and Cannon.

### The Conditions of Detention at Guantánamo

30. Since gaining control of Omar, the United States military has held him virtually *incommunicado*.  He has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, though he has not been charged with an offense, nor has

he been notified of any pending or contemplated charges.  He has made no appearance before either a military or civilian tribunal of any sort, nor has he been provided counsel or the means to contact counsel.  He has not been informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, or customary international law.  Indeed, Respondents have taken the position that Petitioner should not be told of these rights.  As a result, Omar is completely unable either to protect or to vindicate his rights under domestic and international law.

31. On information and belief, Omar: i) has been forced to provide involuntary statements to Respondents' agents at Guantánamo; ii) has been held under conditions that violate his international and constitutional rights to dignity and freedom from cruel, unusual and degrading treatment or punishment; iii) has been housed throughout his detention in accommodation that fails to satisfy both domestic and internationally accepted standards of accommodation for any person subject to detention; and iv) was initially forced to use a bucket for a toilet, and was not provided with basic hygienic facilities.  He has been refused meaningful access to his family.  He has not been provided with the opportunity fully to exercise his religious beliefs.  He has been exposed to the indignity and humiliation of the cameras of the national and international press, brought to Guantánamo with the express consent and control of Respondents.

32. In published statements, Respondents Bush, Rumsfeld, and officers Lehnert and Carrico who preceded Hood and Cannon in their respective positions, indicated the United States may hold Omar under these conditions indefinitely.  *See, e.g.,* Roland Watson, THE TIMES (LONDON), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defence Secretary, suggested last night that al-Qaeda prisoners could be held indefinitely at the base.  He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, ASSOC. PRESS, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held… 'We have to look at Camp X-ray as a work in progress…,' Lehnert told CNN.  … Lehnert said plans are to

build a more permanent prison 'exactly in accordance with federal prison standards'"); John Mintz, The WASH. Post, *Extended Detention In Cuba Mulled*, Feb. 13, 2002 ("As the Bush administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantánamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come."). [1]

33. According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, available at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited on July 1, 2004).

## IV
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (DUE PROCESS – FIFTH AMENDMENT
### TO THE UNITED STATES CONSTITUTION)

34. Petitioner incorporates paragraphs 1 - 33 by reference.

35. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the Fifth Amendment to the United States Constitution. Respondent Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without Due Process of Law. Respondents Rumsfeld, Hood, and Cannon are likewise acting in violation of the Fifth Amendment, since they act at the President's direction. On its face, the Executive Order violates the Fifth Amendment.

### SECOND CLAIM FOR RELIEF
### (DUE PROCESS – FIFTH AMENDMENT

---

[1] *See also* TIME MAG., *Welcome to Camp X-Ray*, Feb. 3, 2002:
More curious still is the matter of the prisoners' ultimate fate. Rumsfeld has laid out four options: a military trial, a trial in U.S. criminal courts, return to their home countries for prosecution, or continued detention 'while additional intelligence is gathered.' The last seems a distinct possibility; the Pentagon plans to build 2,000 cells at Camp X-Ray.

TO THE UNITED STATES CONSTITUTION)

36. Petitioner incorporates paragraphs 1 - 36 by reference.

37. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of the detained Petitioner to be free from arbitrary, prolonged, and indefinite detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. The Executive Order, as applied to the detained Petitioner, violates the Fifth Amendment.

## THIRD CLAIM FOR RELIEF
### (DUE PROCESS – INTERNATIONAL LAW)

38. Petitioner incorporates paragraphs 1 - 37 by reference.

39. By the actions described above, Respondents, acting under color of law, have violated and continue to violate customary international law, Arts. 9 and 14 of the International Covenant on Civil and Political Rights, and Arts. XXVIII, XXV, and XXVI of the American Declaration on the Rights and Duties of Man. Respondent Bush has ordered the prolonged, indefinite, and arbitrary detention of Petitioner, without legal process, in violation of binding obligations of the United States under international law. Respondents Rumsfeld, Hood, and Cannon are likewise acting in violation of international law, since they act at the President's direction. On its face, and as applied to the detained Petitioner, the Executive Order violates international law.

## FOURTH CLAIM FOR RELIEF
### (DUE PROCESS – INTERNATIONAL LAW)

40. Petitioner incorporates paragraphs 1 - 39 by reference.

41. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of the detained Petitioner to be free from arbitrary, prolonged, and indefinite detention, in violation of customary international law, Arts. 9 and 14 of the International Covenant on Civil and Political Rights, and Arts. XXVIII, XXV, and XXVI of the American Declaration on the Rights and Duties of Man. The Executive Order, as applied to the detained Petitioner, violates these and other binding obligations of the United States under

International Law.

## FIFTH CLAIM FOR RELIEF
### (ALIEN TORT CLAIMS ACT – TORTURE)

42. Petitioner incorporates paragraphs 1 - 41 by reference.

43. The acts described herein were inflicted deliberately and intentionally for purposes which included, among others, punishing or intimidating the victim, the detained Petitioner.

44. The acts described herein constitute torture in violation of the law of nations under the Alien Tort Claims Act, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

45. Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against the detained Petitioner.

46. Petitioner is entitled to monetary damages and other relief to be determined at trial for any and all physical or psychological abuse or agony he suffered as a result of his detention.

## SIXTH CLAIM FOR RELIEF
### (ALIENT TORT CLAIMS ACT – CRUEL, INHUMAN OR DEGRADING TREATMENT)

47. Petitioner incorporates paragraphs 1 – 46 by reference.

48. The acts described herein had the intent and the effect of grossly humiliating and debasing the detained Petitioner, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

49. The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Claims Act, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

50. Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified,

and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of the detained Petitioner.

51. Petitioner is entitled to monetary damages and other relief to be determined at trial for any and all physical or psychological abuse or agony he suffered as a result of his detention.

## SEVENTH CLAIM FOR RELIEF
### (ALIEN TORT CLAIMS ACT – ARBITRARY ARREST AND DETENTION)

52. Petitioner incorporates paragraphs 1 - 51 by reference.

53. The acts described herein constitute arbitrary arrest and detention of Petitioner in violation of the law of nations under the Alien Tort Claims Act, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

54. Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and detention of the detained Petitioner.

55. As result of Respondents' unlawful conduct, the detained Petitioner was deprived of his freedom, separated from his family and forced to suffer severe physical and mental abuse, and is entitled to monetary damages and other relief to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### (DUE PROCESS – FAILURE TO COMPLY WITH U.S. MILITARY REGULATIONS AND INTERNATIONAL HUMANITARIAN LAW)

56. Petitioner incorporate paragraphs 1 - 55 by reference.

57. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the rights accorded to persons seized by the United States Military in times of armed conflict, as established by, *inter alia*, the regulations of the United States Military, Articles 4 and 5 of Geneva Convention III, Geneva Convention IV, and customary international law.

## NINTH CLAIM FOR RELIEF
### (WAR POWERS CLAUSE)

58. Petitioner incorporate paragraphs 1 - 57 by reference.

59. By the actions described above, Respondents, acting under color of law, have exceeded the constitutional authority of the Executive and have violated and continue to violate the War Powers Clause by ordering the prolonged and indefinite detention of the detained Petitioner without Congressional authorization.

## TENTH CLAIM FOR RELIEF
### (SUSPENSION OF THE WRIT)

60. Petitioner incorporate paragraphs 1 - 59 by reference.

61. To the extent the Executive Order of November 13, 2001, disallows any challenge to the legality of the Petitioner' detention by way of habeas corpus, the Order and its enforcement constitute an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution.

## ELEVENTH CLAIM FOR RELIEF
### (ARBITRARY AND UNLAWFUL DETENTION – VIOLATION OF THE APA)

62. Petitioner incorporate paragraphs 1 - 61 by reference.

63. By detaining Petitioner for the duration and in the manner described herein, Respondents have arbitrarily, unlawfully, and unconstitutionally detained the Petitioner, in violation of the Administrative Procedures Act, 5 U.S.C. §706(2).

## V
## PRAYER FOR RELIEF

WHEREFORE, Petitioner pray for relief as follows:

1. Grant Petitioner Fatmah Elsamnah Next Friend status, as Next Friend of Omar Khadr;

2. Order the detained Petitioner to be released from Respondents' unlawful custody;

W315434.1

3.  Order Respondents to allow counsel immediately to meet and confer with the detained Petitioner, in private and unmonitored attorney-client conversations;

4.  Order Respondents to cease immediately all interrogations of the detained Petitioner, direct or indirect, while this litigation is pending;

5.  Order and declare the Executive Order of November 13, 2001, as applied to the detained Petitioner, unlawful as a violation of the Fifth Amendment to the United States Constitution;

6.  Order and declare the Executive Order of November 13, 2001, as applied to the detained Petitioner, unlawful as a violation of the Administrative Procedures Act, 5 U.S.C. § 702;

7.  Order and declare the Executive Order of November 13, 2001, as applied to the detained Petitioner, unlawful as a violation of customary international law, the International Covenant on Civil and Political Rights, and the American Declaration on the Rights and Duties of Man;

8.  Order and declare that the Executive Order of November 13, 2001, as applied to the detained Petitioner, violates the War Powers Clause;

9.  Order and declare that the provision of the Executive Order that bars the detained Petitioner from seeking relief in this Court is an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution;

10. Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner is arbitrary and unlawful, a deprivation of liberty without due process in violation of the Fifth Amendment to the United States Constitution, and in violation of the law of nations and treaties of the United States;

11. Order and declare that the detained Petitioner is being held in violation of the Fifth Amendment to the United States Constitution;

12. Order and declare that the detained Petitioner is being held in violation of customary international law, the International Covenant on Civil and Political Rights, and the American Declaration on the Rights and Duties of Man;

13. Order and declare that the detained Petitioner is being held in violation of the regulations of the United States Military, the Geneva Conventions, and international humanitarian law;

14. To the extent Respondents contest any material factual allegations in this Petition, schedule an evidentiary hearing, at which Petitioners may adduce proof in support of their allegations;

15. Order respondents to pay the detained Petitioner monetary damages for any physical or psychological abuse or agony he has suffered, in an amount to be determined at trial; and

16. Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the United States Constitution, federal statutory law, and international law.

Dated: July 2, 2004

Respectfully submitted,

Eric M. Freedman
COUNSEL FOR PETITIONER:
District of Columbia Bar No. 387064

250 W. 94th Street
New York, NY 10025
Tel. (212) 665-2713
Fax (212) 665-2714

W315434.1

## **VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Executed on this 2nd day of July, 2004.


Eric M. Freedman