IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **OMAR AHMED KHADR** | ) | |
| | ) | |
| **FATMAH ELSAMNAH,** | ) | |
| **As Next Friend Of** | ) | |
| **OMAR AHMED KHADR** | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| **GEORGE WALKER BUSH,** | ) | |
| President of the United States | ) | |
| | ) | |
| **DONALD RUMSFELD,** | ) | |
| Secretary, United States | ) | |
| Department of Defense | ) | |
| | ) | |
| **MAJ. GEN. GEOFFERY MILLER,** | ) | |
| Commander, Joint Task | ) | |
| Force - GTMO | ) | |
| Guantánamo Bay Naval Station | ) | |
| Guantánamo Bay, Cuba | ) | |
| | ) | |
| **ARMY COL. NELSON J. CANNON,** | ) | |
| Commander, Camp Delta | ) | |
| Guantánamo Bay Naval Station | ) | |
| Guantánamo Bay, Cuba | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF NATHAN WHITLING

I, **NATHAN WHITLING**, of 3638 – 103B Street, Edmonton, Alberta, Canada, being duly sworn, depose and state as follows:

1.  I am a Barrister and Solicitor and together with Mr. Dennis Edney, Barrister and Solicitor, I have been retained by the Second Petitioner, Fatmah Elsamnah, to act on her behalf and also on behalf of her grandson, the First Petitioner, who is presently detained by the United States military at Camp Delta, Guantánamo Bay Naval Station, Cuba (Guantánamo).

2.  On January 20, 2004, Mr. Edney and I sent a letter to the Honourable Mr. Bill Graham, Minister of Foreign Affairs and International Trade for Canada. In this letter, we requested the Minister to obtain and provide to us any and all information in his possession regarding Omar's legal status. We also asked the Minister to take any and all available steps to assert Omar's legal rights as a child and an international citizen. Annexed hereto marked **"NW 1"** is a copy of this letter.

3.  On February 9, 2004, Mr. Edney and I sent a follow-up letter to Minister Graham asking that he seek certain assurances from the government of the United States as to the manner in which Omar's legal rights would be protected in any future proceedings before United States military commissions. Annexed hereto marked **"NW 2"** is a copy of this letter.

4.  On January 19, 2004, Mr. Edney and I sent letters to President Bush, Secretary Rumsfeld and Secretary Powell requesting that we and our clients be granted access to Omar. Annexed hereto marked **"NW 3" "NW 4"** and **"NW 5"** are copies of these letters.

5.  On February 6, 2004, Mr. Edney and I sent a follow-up letter to President Bush, Secretary Rumsfeld and Secretary Powell requesting information as to Omar's legal status and the nature of any charges laid against him. Annexed hereto marked **"NW 6"** is a copy of this letter.

{E4154877.DOC;1}

6.      Neither Mr. Edney nor myself has received any response to the communications referred to above.

7.      I make this affidavit from my personal knowledge or from information conveyed to me, for the purpose of this petition and for no other purpose or motive.

**SWORN BEFORE ME** this _/ᴏ_  day          )
of _Marcᴴ_ , 2004                                          )
in the City of Edmonton, in the                      )
Province of Alberta, in the Country            )
of Canada                                                            )
                                                                                 )
                                                                                 )
A Commissioner for taking oaths _Notary_ )
in and for the Province of Alberta _Public_   )

**Nathan Whitling**

# EDNEY, HATTERSLEY & DOLPHIN

Barristers and Solicitors

1970 Sun Life Place
10123 - 99 Street
Edmonton, Alberta, T5J 3H1
Phone    (780) 423-7798
         (780) 424-4081
Fax      (780) 425-5247
Email    dedney@shaw.ca

DENNIS EDNEY, B.A., L.L.B.
J. MARTIN HATTERSLEY, Q.C., M.A., LL.B., A.Th.
PATRICK DOLPHIN, B.A., LL.B.

(An Association for the Practice of Law)
(Each Associate is a Professional Corporation)

Our File: 41314

January 20, 2004

Department of Foreign Affairs and International Trade
Lester B. Pearson Building Tower A
125 Sussex Drive
OTTAWA, Ontario
K1A OG2

*This is Exhibit "NW 1" referred to in the Affidavit of*

......Nathan Whitling......

*Sworn before me this* ....10th..... *day*
*of* ...March...... A.D. 2004

A Notary Public, & Commissioner for Oaths
in and for the Province of Alberta

**Attn: Minister of Foreign Affairs Bill Graham**

Dear Sir,

**Re: Omar Ahmed Khadr, Camp X-Ray, Guantánamo Bay, Cuba**

This letter is further to our earlier correspondence dated December 11, 2003. To which we confirm you chose not to respond as requested. As had been noted therein, I, along with my co-counsel, Nathan Whitling, of the law firm of Parlee McLaws LLP, act on behalf of Mr. Omar Ahmed Khadr, a Canadian citizen currently detained in "Camp X-Ray" Guantánamo Bay, Cuba. For your further information, we enclose a copy of a photograph of our client taken prior to his detention, together with copies of his personal identification. We confirm that we have filed an *amicus curiae* brief on behalf of Omar in the Supreme Court of the United States in support of the Petitioners. Among other arguments we have submitted that the Court ought to interpret the Constitution of the United States in a manner consistent with Omar's rights under international law.

Although you have declined to participate in the proceedings now before the Supreme Court of the United States, this letter is provided as a request for you to take any and all available steps to assert and protect Omar's basic human rights as a Canadian citizen and as a child, including all steps taken to date on behalf of our client.

*Factual Circumstances*

We had advised you in our earlier correspondence that Omar has been detained in Guantánamo Bay since approximately late 2002. He is confined to a 2.4 metre by 1.8 metre cell for at least 23 hours per day. He receives 15-30 minutes of outdoor exercise approximately 2-3 times per week, and is interrogated regularly. Omar was injured at

the time of his capture, and has lost approximately 90 per cent of the vision in his left eye. We understand that Omar has been shot twice and is wounded in the abdomen. The legality of Omar's detention has never been determined or reviewed by a competent tribunal. He has never been formally advised as to the nature of the charges laid against him (if any). Further, Omar has also been denied access to a Canadian consular representative guaranteed under the *Vienna Convention on Consular Relations*.

### Mr. Khadr's Ongoing Detention is in Violation of International Law

We ask that you conduct an assessment as to the legalities of Omar's detention and treatment by the United States, and to provide us with the views of your Ministry in this regard. We suggest it is patently clear that Omar's rights as a juvenile and as a Canadian citizen are being violated by the United States, and we take this opportunity to provide our own updated assessment of this issue, although much of this material has been referred to you in previous correspondence.

As you are aware, the United States has taken the view that Omar and the other detainees in Guantánamo Bay are "enemy combatants", and as such, need not be accorded the rights conferred upon them by the *Geneva Convention relative to the Treatment of Prisoners of War*. This determination has been made on a blanket basis with respect to all the detainees rather than upon the circumstances relevant to each individual case. In this manner, the United States has attempted to evade those provisions which prohibit interrogation (Article 17), and which require the detainees to be accorded quarters, food, and clothing under conditions as favourable as those provided for the United States forces quartered in the area (Chapter II). This unilateral and arbitrary determination constitutes a direct violation of Article 5 of the *Convention* which provides:

> Should any doubt arise as to whether persons, having committed a belligerent act and having fallen into the hands of the enemy, belong to any of the categories enumerated in Article 4, such persons shall enjoy the protection of the present Convention until such time as their status has been determined by a competent tribunal.

Astonishingly, the United States' detention of Omar is in direct violation of even its own military regulations. *See Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees*, U.S. Army Regulation 190-8, Chapter 1-5, para. a, Applicable to the Departments of the Army, the Navy, the Air Force, and the Marine Corps, Washington, D.C. (1 October 1997) ("All persons taken into custody by U.S. forces will be provided with the protections of the 1949 Geneva Convention Relative to the Treatment of Prisoners of War ("GPW") until some legal status is determined by competent authority."); *id.* at 1-6 para. b ("a competent tribunal shall

determine the status of any person . . . concerning whom any doubt . . .exists"); *id.* at 1-6 para. g ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be . . . imprisoned or otherwise penalized, without further proceedings to

determine what acts they have committed and what penalty should be imposed."); *id.* at 3-8, para. d ("Accused persons will be notified promptly of the charges in writing. . . . These persons will be tried as soon as possible."); U.S. Department of the Army Field Manual, FM 3- 19.40, 1-10 (1 August 2001) ("A person in the custody of US armed forces . . . is treated as an EPW [enemy prisoner of war] until a legal status is ascertained by competent authority."); *id.* at 4-33 ("A tribunal is held according to Article 5, GPW.
It determines the status of an individual who does not appear to be entitled to EPW status.. . ").

The decision of the United States to detain Omar at Guantánamo Bay is of course a carefully constructed plan to evade its legal responsibilities. As the highly respected and independent association the American College of Trial Lawyers has stated in its *Report on Military Commissions for the Trial of Terrorists*:

> It appears that the content of the Order and the Procedures, particularly the exclusion of U.S. citizens from their reach and the placement of the detainees at Guantanamo, were carefully designed to evade judicial scrutiny and to test the limits of the President's constitutional authority.

In the recent decision of *Gherebi v. Bush* 2003 U.S. App. LEXIS 25625 the Court of Appeals for the Ninth Circuit

> Gherebi has not been subjected to a military trial. Nor has the government employed the other time-tested alternatives for dealing with the circumstances of war: it has neither treated Gherebi as a prisoner of war (and has in fact declared that he is not entitled to the rights of the *Geneva Conventions*,... nor has it sought to prosecute him under special procedures designed to safeguard national security... Instead, the government is following an unprecedented alternative. Under the government's theory, it is free to imprison Gherebi indefinitely along with hundreds of other citizens of foreign countries, friendly nations among them, and to do with Gherebi and these detainees as it will, when it pleases, without any compliance with any rule of law of any kind, without permitting him to consult counsel, and without acknowledging any judicial forum in which its actions may be challenged. Indeed, at oral argument, the government advised us that its position would be the same even if the claims were that it was engaging in acts of torture or that it was summarily executing the detainees. To our knowledge, prior to the current detention of prisoners at Guantanamo, the U.S. government has never before asserted such a grave and startling proposition. Accordingly, we view Guantanamo as unique not only because the United States' territorial relationship with the Base is without parallel today, but also because it is the first time that the government has announced such an extraordinary set of principles - a position so extreme that it raises the gravest concerns under both American and international law.

As you are of course aware, the *International Covenant on Civil and Political Rights* prohibits arbitrary detention. In particular, the *Covenant* provides:

Department of Foreign Affairs and International Trade
January 20, 2004
Page 4

> "Anyone who is deprived of his liberty by arrest or detention shall be entitled to take proceedings before a court, in order that court may decide without delay on the lawfulness of his detention and order his release if the detention is not lawful." [Article 9 (4)].

Both Canada and the United States have signed and ratified the *Covenant*. The *Covenant* is a treaty by which the United States has made a legally enforceable promise to Canada not to detain Canadian citizens arbitrarily. Canada has a right to insist that the United States maintain this promise.

The United Nations *Convention on the Rights of the Child* provides:

### Article 37
States Parties shall ensure that:

(a)    No child shall be subjected to torture or other cruel, inhuman or degrading treatment or punishment. Neither capital punishment nor life imprisonment without possibility of release shall be imposed for offences committed by persons below eighteen years of age;

(b)    No child shall be deprived of his or her liberty unlawfully or arbitrarily. The arrest, detention or imprisonment of a child shall be in conformity with the law and shall be used only as a measure of last resort and for the shortest appropriate period of time;

(c)    Every child deprived of liberty shall be treated with humanity and respect for the inherent dignity of the human person, and in a manner which takes into account the needs of persons of his or her age. In particular, every child deprived of liberty shall be separated from adults unless it is considered in the child's best interest not to do so and shall have the right to maintain contact with his or her family through correspondence and visits, save in exceptional circumstances;

(d)    Every child deprived of his or her liberty shall have the right to prompt access to legal and other appropriate assistance, as well as the right to challenge the legality of the deprivation of his or her liberty before a court or other competent, independent and impartial authority, and to a prompt decision on any such action.

In *R. v. Sharpe*, [2001] 1 S.C.R. 45, L'Heureux-Dubé, Gonthier and Bastarache JJ. of the Supreme Court of Canada stated at p. 140-41.:

> The protection of children from harm is a universally accepted goal. While this Court has recognized that, generally, international norms are not binding without legislative implementation, they are relevant sources for interpreting rights domestically. . . .

Department of Foreign Affairs and International Trade
January 20, 2004
Page 5

> [A] balancing of competing interests [in constitutional interpretation] must be informed by Canada's international obligations. The fact that a value has the status of an international human right is indicative of the high degree of importance with which it must be considered...

> Both legislators abroad and the international community have acknowledged the vulnerability of children and the resulting need to protect them. It is therefore not surprising that the *Convention on the Rights of the Child* has been ratified or acceded to by 191 states as of January 19, 2001, making it the most universally accepted human rights instrument in history.

In *Baker v. Canada (Minister of Citizenship and Immigration)*, [1999] 2 S.C.R. 817, the Supreme Court of Canada affirmed that Ministerial authority must be exercised in a manner consistent with the above *Convention*. In doing so, the Court stated as follows:

> The values and principles of the *Convention* recognize the importance of being attentive to the rights and best interests of children when decisions are made that relate to and affect their future. In addition, the preamble, recalling the *Universal Declaration of Human Rights*, recognizes that "childhood is entitled to special care and assistance". A similar emphasis on the importance of placing considerable value on the protection of children and their needs and interests is also contained in other international instruments. The United Nations *Declaration of the Rights of the Child* (1959), in its preamble, states that the child "needs special safeguards and care". The principles of the Convention and other international instruments place special importance on protections for children and childhood, and on particular consideration of their interests, needs, and rights.

The illegality of Omar's detention has been repeatedly noted by international tribunals and foreign courts. Upon the initial transfer of prisoners to Guantánamo, the United Nations High Commissioner for Human Rights released a Statement which included the following:

> It is appropriate to recall that there are international legal obligations that should be respected. In particular, I would like to recall that:

> · All persons detained in this context are entitled to the protection of international human rights law and humanitarian law, in particular the relevant provisions of the *International Covenant on Civil and Political Rights* (ICCPR) and the *Geneva Conventions* of 1949.

> · The legal status of the detainees, and their entitlement to prisoner-of-war (POW) status, if disputed, must be determined by a competent tribunal, in accordance with the provisions of Article 5 of the *Third Geneva Convention*.

> · All detainees must at all times be treated humanely, consistent with the provisions of the ICCPR and the *Third Geneva Convention*.

Department of Foreign Affairs and International Trade
January 20, 2004
Page 6

> · Any possible trials should be guided by the principles of fair trial, including the presumption of innocence, provided for in the ICCPR and the *Third Geneva Convention*.

In denying Omar consular visits, the United States has also committed a direct violation of its obligations to Canada under the *Vienna Convention on Consular Relations*.

The United Nations' Working Group on Arbitrary Detention has recently prepared a "Legal Opinion Regarding the Deprivation of Liberty of Persons Detained in Guantánamo Bay". This opinion concludes that the conduct of the United States constitutes violations of both the *Geneva Convention* and of the *International Covenant on Civil and Political Rights*.

In *Abbasi v. Secretary of State for Foreign and Commonwealth Affairs*, EWCA CIZ. 1598 (2002), 2003 U.K.H.R.R. 76, the English Court of Appeal described the situation of the Guantánamo detainees as a "legal black hole". The Court also expressed its "deep concern that, in apparent contravention of the fundamental principles of law [the prisoners] may be subject to indefinite detention in territory over which the United States has exclusive control with no opportunity to challenge the legitimacy of [their] detention before any court or tribunal." Similarly, the Inter-American Commission on Human Rights of the Organization of American States has ruled that it is contrary to international law for the Guantánamo detainees to be held "entirely at the unfettered discretion of the United States government", and requested the United States to "take the urgent measures necessary to have the legal status of the detainees at Guantanamo Bay determined by a competent tribunal."

The arbitrary detention of Omar and the other children in Guantánamo Bay raises issues and interests of grave concern to the international community. Mr. Olara Otunnu, Special Representative of the Secretary General of the United Nations for Children and Armed Conflict has publicly stated that both the participation of children in armed conflict and their detention in Guantánamo Bay are "equally prohibited under international law". Mr. Otunnu has also called upon the United States to allow "a very prompt determination of their case," and added that "Whatever the circumstances, children should be reunited with their families... We do not sentence children to jail. We do not punish them. We give them healing and get them rehabilitated."

Similarly, Omar's personal circumstances have raised serious concerns on the part of such respected non-governmental organizations as Amnesty International. In a letter addressed to President Bush, Secretary General Irene Khan stated:

> It seems something of an irony that the USA, one of the first countries to ratify the Optional Protocol to the Convention on the Rights of the Child on the involvement of children in armed conflicts, is now treating these children in a way that undermines fundamental protections under the body of the main treaty itself.

[...]

Department of Foreign Affairs and International Trade
January 20, 2004
Page 7

We call for all under-18-year-olds held in Guantánamo to have immediate access to lawyers and their families. They should be promptly charged and tried within a reasonable time in accordance with fair trial standards, or released into appropriate and safe circumstances.

The Parliamentary Assembly of Europe has expressly recognized that the arbitrary detention and treatment of Omar by the United States constitutes a "flagrant breach" of his rights under international law as reflected in the instruments above. In the Parliamentary Assembly of Europe's Resolution No. 1340 (2003) (Adopted June 26, 2003), it was stated:

The Parliamentary Assembly:

[…]

ii. notes that a number of children are being held in Guantánamo Bay, including a "handful" of children between 13 and 15 years of age transferred from the Bagram Air Base in 2003, and a 16-year old Canadian national transferred at the end of 2002;

iii. believes that children should only be detained as a last resort and that they require special protection; that the continuing detention of these young people is a most flagrant breach of the United Nations Convention on the Rights of the Child.

We ask that your Ministry assess the legality of Omar's treatment at the hands of the United States, and that you provide us with your own views as to whether or not the United States has in fact acted in contravention of international law.

**Omar's Plea for Action**

As you can see from the above, bodies such as the United Nations and the Parliamentary Assembly of Europe have already made far greater efforts to protect Omar's basic human rights than has the Canadian Government. Despite the obvious and egregious violations being perpetrated against Omar, Canada chosen to remain silent. This inaction communicates to each and every Canadian citizen that he or she will not be afforded protection when traveling abroad with a Canadian passport. This contrasts sharply to the message in your Ministry's publication entitled *A Guide For Canadians Imprisoned Abroad*.

In fact, I would suggest your silence in refusing to respond to our request for your participation in filing an amicus curiae before the U.S. Supreme Court on behalf of Mr. Khadr does a disservice to the reputation and security of Canadian society as a whole. You will recall that the question presented before the United States Supreme Court is as follows:

*Whether United States courts lack jurisdiction to consider challenges to the*

Department of Foreign Affairs and International Trade
January 20, 2004
Page 8

*legality of the detention of foreign nationals captured abroad in connection with
hostilities and incarcerated at the Guantanamo Bay Naval Base, Cuba.*

Canada could have taken the opportunity to emphasize to the Court and through the Court, to the
international community at large, the importance we Canadians place on the rule of law for all its
citizens who are detained abroad. The Canadian government, being a signatory on the United
Nations *Convention on the Rights of the Child*, could have had the opportunity to remind the
U.S. Court of the special importance Canadian society and the International community accords
to children to ensure their fundamental rights are not violated.

Our client's family members are perplexed the Canadian government chose not to address the
above question by way of an *amicus curiae* brief. By your silence, you have failed in your duty
to assist a Canadian citizen detained abroad. An abuse perpetrated on one of our citizens is an
abuse against all of our citizenry. While no other foreign governments have applied for *amicus
curiae* status, other countries such as Britain and Australia had forcefully lobbied for other
detained nationals. In fact, Lord Goldsmith, the Attorney – General, obtained concessions that
British nationals would not be executed and will be allowed confidential access to their lawyers.
Meanwhile, Omar continues to be detained in harsh conditions with no access to legal counsel
potentially facing the death penalty.

We are concerned at the apparent violation of Omar's right to silence and the right not to be
questioned without access to legal counsel. Foreign Affairs spokesman Reynald Doiron
acknowledged that Canadian intelligence officials were allowed to interview Omar while access
to Canadian consular officials had been denied. The preamble to the *Canadian Charter of Rights
and Freedoms* enshrines the principle of rule of law in our constitution. While the existence of
ministerial discretion is not in and off itself contrary to this principle, the courts have decided
that the necessity for the government and its officials to obey the law is a fundamental aspect of
the rule of law. The Canadian Government chose to deny this right to the most vulnerable in our
society at a most vulnerable time in Omar's life. Omar is a child and has been denied and
continues to be denied the most basic of rights.

Foreign Affairs spokesman, Reynald Doiron, explanation for the denial of consular services to
Omar provides no comfort to Canadian citizens abroad:

> "It was refused along the same lines that consular access was refused to other
> countries …,"
> " Canada is not singled out in that matter. It's an unusual situation in very unusual
> times."

It is indeed unusual times when foreign and Canadian  nationals detained in Guantanamo Bay
are being denied the most basic principles of international law while American detainees were
afforded due process of law. There is simply no way for the Canadian public to judge whether
the detention of Omar is justified when any charges against our client have not been made
public, and stories told by prisoners eventually released from Guantanamo Bay suggest that the
flimsiest  reasons for detention sometimes suffice. Defeating terrorism means convincing the

Department of Foreign Affairs and International Trade
January 20, 2004
Page 9

world of the importance of the rule of law. The conduct of the Bush administration towards our client and other detainees handicaps this effort if, in the process of fighting terrorism's violation of the right to life, we violate the fundamental rights of our citizens.

In that regard, we are concerned the Canadian Government is sending conflicting messages to the American authorities about its respect for the rule of law on behalf of its citizens detained abroad. Government conduct with regards to the Omar Khadr case demonstrates your department will remain silent when confronted by clear abuses of civil and human rights against Canadian citizens abroad. It will also be complicit with American authorities in denying fundamental rights by the unlawful questioning of a Canadian child protected under the United Nations *Convention on the Rights of the Child and* our own constitution.

We have many concerns in relation to Omar's situation and request that you take a number of steps in relation to our clients.

### Disclosure of All Available Non-Privileged Information

On behalf of Omar and his family, we request that you disclose to us all information and materials currently in your possession or power which relate to Omar's current status. Without limiting the generality of the foregoing, we request specific confirmation that Omar is indeed being held by U.S. forces in Guantanamo Bay, without charge, and without access to legal counsel. We also request disclosure of all information in terms of his health and well-being.

We request particulars as to the dates of any past visits to Omar by Canadian officials as well as the names of those individuals who have spoken with Omar. In this regard, we request full particulars of any and all information obtained from and about Omar during these visits, subject of course to privilege on the basis of national interest and security.

A request pursuant to the *Access to Information Act* has already been sent by Mr. Whitling in this regard, and we ask that you take all steps to ensure that it is dealt with in a prompt and appropriate manner.

### Exercise of All Available Mechanisms Under International Law for Complaint and Redress

We hereby request and demand that the government of Canada exercise its rights under international law to protect Omar's basic human rights, both as a child and as a Canadian citizen. In addition to the *Vienna Convention on Consular Access*, we refer specifically to the *International Covenant on Civil and Political Rights*, and Article 9.4 thereof quoted above.

Article 41 of the *Covenant* sets out an optional inter state complaint mechanism. Both Canada and the United States have accepted the Covenant Article 41 inter-state complaints mechanism. Canada made a declaration under Article 41 on 29 October 1979 in these words:

Department of Foreign Affairs and International Trade
January 20, 2004
Page 10

> "The Government of Canada declares, under article 41 of the International Covenant on Civil and Political Rights, that it recognizes the competence of the Human Rights Committee referred to in article 28 of the said Covenant to receive and consider communications submitted by another State Party, provided that such State Party has, not less than twelve months prior to the submission by it of a communication relating to Canada, made a declaration under article 41 recognizing the competence of the Committee to receive and consider communications relating to itself."

The United States made a declaration under Article 41 in these words:

> "The United States declares that it accepts the competence of the Human Rights Committee to receive and consider communications under article 41 in which a State Party claims that another State Party is not fulfilling its obligations under the Covenant."

We suggest that a failure on the part of your Ministry to intervene on behalf of Omar, and to invoke his fundamental human rights under domestic and international law would constitute a violation of his rights under s. 7 of the *Canadian Charter of Rights and Freedoms*. We therefore request that you exercise the rights available to the government of Canada under international law.

## Consular, Family, and Legal Counsel Visitation

We further request that you immediately make efforts to be accorded true consular visits with Omar, for the purposes of ensuring his physical and psychological health, and the observance of his basic human rights. In this regard we cite the *Vienna Convention on Consular Relations* to which both Canada and the U.S. are parties. Although we suggest that Omar's family as well as ourselves as his legal counsel ought to be permitted to attend any such visits, we suggest that at the very least, such visits ought to be arranged to be attended by representatives of your Ministry by whatever means necessary. We would then request a report of any information obtained from Omar in the course of such visits.

As you are aware, Omar has not been accorded any access to independent counsel. Obviously, this is Omar's fundamental right. We request and demand that you take any and all available attempts to facilitate Omar's access to independent counsel such as ourselves or other suitable and qualified persons.

## Protection Against Discrimination on the Basis of Canadian Citizenship

We suggest that one of the circumstances which ought to be of immediate concern to your office is that Omar is being discriminated against by U.S. authorities on the basis of his Canadian citizenship. As you may be aware, those persons who have been detained by U.S. forces over the

Department of Foreign Affairs and International Trade
January 20, 2004
Page 11

course of the War on Terror who are U.S. citizens have been accorded full due process rights, and fair trials in the U.S. domestic courts. However, all such rights are being denied to Omar simply because he is a Canadian rather than an American. We suggest that this is precisely the type of situation which ought to raise concerns on the part of your Ministry. In this regard, we refer you to the following statement contained at page 5 of your publication entitled *Guidelines for Canadians Imprisoned Abroad*:

> [T]he Government of Canada will make every effort to ensure that you receive equitable treatment under the local criminal justice system. It will ensure that you are not penalized for being a foreigner, and that you are neither discriminated against nor denied justice because you are Canadian.

Omar's current situation is a clear case of a Canadian being penalized for being a foreigner. We therefore request and demand that you take any and all available steps to ensure that Omar is accorded the same rights, privileges and protections as the American citizens who have been arrested and detained by U.S. forces during the War on Terror.

### Legal Status and Jeopardy

Generally speaking, Omar's family wishes to obtain any and all available information as to his current and future status, as well as information with respect to anything they can do to assist Omar. In this regard, we request that you seek to obtain any and all such information regarding Omar's status from the U.S. authorities and provide us with same. More specifically, we ask that you obtain answers to at least the following questions:

Why is Omar currently being detained?
How long is his intention expected to last?
Has he been designated as a prisoner of war for the purpose of the *Geneva Conventions*?
Will Omar be accorded a trial?
If so, when?
If so, what will be the nature of the tribunal, i.e. military, domestic, or other, and what rules and procedures will be applicable to the proceedings before this tribunal?
What evidence exists to support his ongoing detention?

Of particular concern to Omar's family is what to expect in terms of possible sentences or punishments, whether legal or extra-legal, which may be imposed upon Omar by U.S. authorities. In particular, Omar's family is obviously gravely concerned as to the possibility that capital punishment may be among the range of possible sentences to be imposed. We urgently request that you seek and obtain any and all information with respect to this possibility.

We request that the take all available steps to encourage the American authorities to process Omar's case without undue delay.

### Living Conditions and Medical Care

We request that you take all available steps to ensure that Omar is being provided with adequate nutrition and medical care. In this regard we emphasize that to our knowledge Omar has sustained serious injuries and it is of great concern to his family that he receive the best available medical care, including access to specialists able to treat his particular types of injuries.

### Conclusion

As you have no doubt perceived, this letter constitutes an urgent plea for help from a juvenile Canadian citizen and his family. We suggest that there will never be a clearer case of international law violations than that which had been and continues to be perpetrated against Omar. We suggest that it is your obligation under to protect Omar's rights from violation and abuse, ask that you provide an initial response to the requests contained in this letter within 10 days of its receipt.

Yours very truly,

EDNEY, HATTERSLEY & DOLPHIN

DENNIS EDNEY



**Parlee McLaws LLP**
BARRISTERS & SOLICITORS

February 9, 2004

**NATHAN J. WHITLING**
DIRECT DIAL: (780) 423-8658
EMAIL: nwhitling@parlee.com
OUR FILE #: 62695-1/NJW

*VIA FACSIMILE & COURIER*

Department of Foreign Affairs and International Trade
Lester B. Pearson Building, Tower A
125 Sussex Drive
Ottawa, ON   K1A 0G2

*This is Exhibit "NW 2" referred to in the Affidavit of*

*Nathan Whitling*

*Sworn before me this 10 th day*

*of March A.D. 2004*

*A Notary Public, Commissioner for Oaths in and for the Province of Alberta*

**Attention:     Bill Graham, Minister of Foreign Affairs**

Dear Sir:

**Re:     Omar Ahmed Khadr, Guantánamo Bay Detainee**

Kindly receive this letter as an addendum or supplement to the letter sent to your office by Mr. Dennis Edney dated January 20, 2004. I confirm that the writer acts as co-counsel for Omar Ahmed Khadr, along with Mr. Edney.

We enclose for your review one Authorization and Consent to Act signed by Omar's grandmother, Fatima El-Samnah, and one Authorization and Consent to Act signed by Omar's brother, Abdur Rahman Khadr. As these materials indicate, both Mr. Edney and the writer have been retained by Mr. Khadr's family to act in his best interests. Additionally, these materials confirm that Omar is being held *in communicado* in Guantánamo Bay and may not make requests to your Ministry himself.

We also enclose for your review a copy of a News Release from the United States Department of Defence dated November 25, 2003. We note that this document confirms that the United States government has entered into an agreement with the Australian government in relation to the manner in which an Australian citizen will be tried and treated before military commissions constituted by the Department of Defence. **Notably, this document confirms that Australia has sought and received assurances that the United States will not seek the death penalty as against their citizen, Mr. Hicks. We hereby request and demand that your Ministry seek an equivalent assurance on behalf of Omar to be implemented in the event that he is charged and tried before a United States Military Commission.** In this regard, we cite the decision of the Supreme Court of Canada in *United States v. Burns*, [2001] 1 S.C.R. 283. We also refer to the numerous other conditions in this agreement, all of which we request that your Ministry seek on Omar's behalf. These include:

1.     Conversations between Omar and his defence counsel will not be monitored;

{E4143445.DOC;1}

**PLEASE REPLY TO EDMONTON OFFICE**

**EDMONTON**
1500 Manulife Place
10180–101 Street, Edmonton, Alberta  T5J 4K1
Telephone: (780)423-8500  Fax: (780)423-2870

Established 1883
Patent & Trademark Agents
Web Site: www.parlee.com

**CALGARY**
3400 Petro-Canada Centre
150–6 Avenue SW, Calgary, Alberta  T2P 3Y7
Telephone: (403)294-7000  Fax: (403)265-8263

2.   Omar will not be excluded from any portion of the proceedings;

3.   Arrangements will be made to transfer Omar to Canada for the purpose of serving any sentence which may be imposed upon him;

4.   Any military commissions will be open, the media present and appropriately cleared representatives of the accused's government may observe the proceedings;

5.   If Omar is convicted, the Canadian government may make submissions to the Review Panel;

6.   Omar may be permitted to talk to appropriately cleared family members via telephone, and two appropriately cleared family members would be able to attend his trial;

7.   Omar may choose to have an appropriately cleared foreign attorney as a consultant to the Defense Team. Foreign attorney consultant access to attorney client information, case material or the accused will be subject to appropriate security clearances and restrictions and determined on a case-by-case basis; and

8.   The above assurances are in addition to other military commission procedures which already provide for the presumption of innocence, proof of guilt beyond a reasonable doubt, representation by a competent and zealous defense counsel free of charge, no adverse inference for choosing to remain silent and the overall requirement that any commission proceedings be full and fair.

Finally, I include colour copies of the photographs and identification which were referred to in Mr. Edney's original letter but which were not enclosed.

Given the seriousness of Omar's current predicament, this is a situation of the utmost urgency calling for your immediate attention. Despite this, we have yet to receive any response to our past correspondence. We look forward to hearing from your office in the very near future, failing which we will be seeking appropriate relief in the Federal Court of Canada. Kindly govern yourself accordingly.

Yours truly,

**PARLEE McLAWS LLP**

NATHAN J. WHITLING
NJW/ab
Encls.

c.c. Dennis Edney *(without enclosures)*

{E4143445.DOC;1}

# EDNEY, HATTERSLEY & DOLPHIN

Barristers and Solicitors

#1970 Sun Life Place
10123 - 99th Street
Edmonton, AB, Canada, T5J 3H1
Phone    (780) 423-4081
          (780) 424-7798
Fax      (780) 425-5247

E-mail:dedney@shaw.ca

Our file:  41310

January  19 , 2004

VIA FAX:  202-456-2461

The Whitehouse
Department of Presidential Correspondence
1600 Pennsylvania Avenue, N.W.
WASHINGTON, D.C.
20500

Dennis Edney, B.A., LL.B.*
J. Martin Hattersley, Q.C., M.A., LL.B., A.Th.*
Patrick Dolphin, B.A., LL.B.*

(An Association for the Practice of Law)
*Denotes Professional Corporation

*This is Exhibit "NW 3" referred to in the
Affidavit of*
*........Nathan Whiting........*
*Sworn before me this ....10 th .....day*
*of ....March.........A.D. 2004*

*A Notary Public .......................*
*in and for the Province of Alberta*

Attention:  Mr. George Bush, President of the United States

-------------------------------------------------------------------------------

Dear Mr. President:

## Re:  Our Client:  Omar Ahmed Khadr – Canadian Detainee at Guantanamo Bay, Cuba

We are the Solicitors for Omar Ahmed Khadr, a 17 year-old Canadian Citizen who has been detained in Guantanamo Bay since he was 15 years old .   Mr. Khadr was injured at the time of his capture and has lost approximately 90 percent of vision in his left eye.

On December 11, 2003, the Solicitor General of the United States consented to our filing a Brief of Amicus Curiae on behalf of Mr. Khadr in the Supreme Court of the United States. Our Brief was filed on January 14, 2004.  In order to further assist our client, we request your permission to:

 (1) Allow myself and other representatives on Mr. Khadr's legal team to have access to him in Guantanamo Bay;

 (2) Allow Mr. Khadr's family to visit him in Guantanamo Bay.

We understand that certain other detainees namely British detainees have access to their legal representatives. We see no reason why that same right should not be afforded to our client.

Please have your representatives contact us with your approval as soon as possible. Thank you for your anticipated cooperation.

Yours very truly,

EDNEY, HATTERSLEY & DOLPHIN

DENNIS EDNEY
DE:yn

# EDNEY, HATTERSLEY & DOLPHIN

Barristers and Solicitors

Dennis Edney, B.A., LL.B.*
J. Martin Hattersley, Q.C., M.A., LL.B., A.Th.*
Patrick Dolphin, B.A., LL.B.*

#1970 Sun Life Place
10123 - 99th Street
Edmonton, AB, Canada, T5J 3H1
Phone     (780) 423-4081
          (780) 424-7798
Fax       (780) 425-5247

E-mail:dedney@shaw.ca

(An Association for the Practice of Law)
*Denotes Professional Corporation

Our file:  41310

January  19 , 2004

VIA FAX:  (703) 697-9080

Secretary of Defense
1000 Defense Pentagon
Washington, DC  20301

Attention:  Honorable Donald H. Rumsfeld
------------------------------------------------------------------------------

*This is Exhibit "NW4" referred to in the*
*Affidavit of*
*Nathan Whitling*
*Sworn before me this 10th day*
*of March A.D. 2004*
*A Notary ... Commissioner for Oaths*
*in and for the Province of Alberta*

Dear Mr. Secretary:

## Re: Our Client:  Omar Ahmed Khadr – Canadian Detainee at Guantanamo Bay Cuba

We are the Solicitors for Omar Ahmed Khadr, a 17 year-old Canadian Citizen who has been detained in Guantanamo Bay since he was 15 years old .   Mr. Khadr was injured at the time of his capture and has lost approximately 90 percent of vision in his left eye.

On December 11, 2003, the Solicitor General of the United States consented to our filing a Brief of Amicus Curiae on behalf of Mr. Khadr in the Supreme Court of the United States. Our Brief was filed on January 14, 2004.  In order to further assist our client, we request your permission to:

(1) Allow myself and other representatives on Mr. Khadr's legal team to have access to him in Guantanamo Bay;

(2) Allow Mr. Khadr's family to visit him in Guantanamo Bay.

We understand that certain other detainees namely British detainees have access to their legal representatives. We see no reason why that same right should not be afforded to our client.

Please have your representatives contact us with your approval as soon as possible. Thank you for your anticipated cooperation.

Yours very truly,

EDNEY, HATTERSLEY & DOLPHIN

DENNIS EDNEY
DE:yn

# Edney, Hattersley & Dolphin

Barristers and Solicitors

Dennis Edney, B.A., LL.B.*
J. Martin Hattersley, Q.C., M.A., LL.B., A.Th.*
Patrick Dolphin, B.A., LL.B.*

#1970 Sun Life Place
10123 - 99th Street
Edmonton, AB, Canada, T5J 3H1
Phone   (780) 423-4081
          (780) 424-7798
Fax     (780) 425-5247

E-mail:dedney@shaw.ca

Our file: 41310

(An Association for the Practice of Law)
*Denotes Professional Corporation

*This is Exhibit "NW 5" referred to in the Affidavit of*

.....*Nathan Whitling*.....

*Sworn before me this* *10th* *day of* *March* *A.D.* *2004*

*A Notary Public / Commissioner for Oaths [seal]
in and for the Province of Alberta*

January 19 , 2004

VIA FAX: (202) 647-2283

U.S. Department of State
2201 C Street NW
Washington, DC
20520

Attention: Colin L. Powell, Secretary of State

------------------------------------------------------------------------

Dear Mr. Secretary:

## Re: Our Client: Omar Ahmed Khadr –Canadian Detainee at Guantanamo Bay, Cuba

We are the Solicitors for Omar Ahmed Khadr, a 17 year-old Canadian Citizen who has been detained in Guantanamo Bay since he was 15 years old . Mr. Khadr was injured at the time of his capture and has lost approximately 90 percent of vision in his left eye.

On December 11, 2003, the Solicitor General of the United States consented to our filing a Brief of Amicus Curiae on behalf of Mr. Khadr in the Supreme Court of the United States. Our Brief was filed on January 14, 2004. In order to further assist our client, we request your permission to:

    (1) Allow myself and other representatives on Mr. Khadr's legal team to have access to him in Guantanamo Bay;

    (2) Allow Mr. Khadr's family to visit him in Guantanamo Bay.

We understand that certain other detainees namely British detainees have access to their legal representatives. We see no reason why that same right should not be afforded to our client.

Please have your representatives contact us with your approval as soon as possible. Thank you for your anticipated cooperation.

Yours very truly,

EDNEY, HATTERSLEY & DOLPHIN

DENNIS EDNEY
DE:yn



## Parlee McLaws LLP
### BARRISTERS & SOLICITORS

February 6, 2004

**NATHAN J. WHITLING**
DIRECT DIAL: (780) 423-8658
EMAIL: nwhitling@parlee.com
OUR FILE #: 62695-1/NJW

### *VIA FACSIMILE*

Secretary of Defense
1000 Defense Pentagon
Washington, DC   20301

**Attention:  Honorable Donald H. Rumsfeld**

U.S. Department of State
2201 C Street NW
Washington, DC

**Attention:  Colin L. Powell,
            Secretary of State**

*This is Exhibit "NW 6" referred to in the
Affidavit of*

*Nathan Whitling*

*Sworn before me this  10th  day*

*of  March  A.D. 2004*

*A Notary Public ... ssioner for Oaths
in and for the Province of Alberta*

The Whitehouse
Department of Presidential Correspondence
1600 Pennsylvania Avenue, NW
Washington, DC   20500

**Attention:  Mr. George Bush, President of the
            United States**

Dear Sirs:

**Re:    Omar Ahmed Khadr - Canadian Citizen Detained in Guantánamo Bay, Cuba**

Kindly receive this letter as an addendum or supplement to the letter recently provided to your office by Mr. Dennis Edney in relation to Omar Ahmed Khadr, a Canadian citizen presently detained in Guantánamo Bay. I confirm that I act as co-counsel along with Mr. Edney on behalf of Mr. Khadr and his family. Our client's family is greatly concerned as to his welfare. His status as a juvenile and as a Canadian have raised concerns on the part of the international community.

This letter is provided as our formal request for information and for access to our client.

Firstly, we request that you provide us with written confirmation that our client is indeed being detained in Guantánamo Bay. We further request the provision of any and all information regarding the dates and circumstances of his capture.

Secondly, we request confirmation as to whether or not our client is being accorded the status of a prisoner of war under the *Geneva Conventions* and whether or not your government has and intends to meet the requirements of those conventions.

{E4142803.DOC;1}

**PLEASE REPLY TO EDMONTON OFFICE**

**EDMONTON**
1500 Manulife Place
10180–101 Street, Edmonton, Alberta  T5J 4K1
Telephone: (780)423-8500  Fax: (780)423-2870

Established 1883
Patent & Trademark Agents
Web Site: www.parlee.com

**CALGARY**
3400 Petro-Canada Centre
150–6 Avenue SW, Calgary, Alberta  T2P 3Y7
Telephone: (403)294-7000  Fax: (403)265-8263

Thirdly, if our client is not being accorded the status of a prisoner of war, please advise us as to whether or not his status had been determined by an impartial tribunal.

Fourthly, please advise us as to the nature of any charges or potential charges he faces.

Fifthly, we ask that you permit Omar to receive visits from his family and from legal counsel as soon as possible. We understand that certain other detainees, namely British detainees, have access to their legal representatives.  We see no reason why that same right should not be afforded to our client.

Please have your representatives contact us with your response as soon as possible.  Thank you for your anticipated cooperation.

Yours truly,

**PARLEE McLAWS LLP**

NATHAN J. WHITLING
NJW/ab

cc:     Dennis Edney