**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OMAR KHADR, et al.,<br><br>Petitioners,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>Respondents. | Civil Action No.  04-1136 (JDB)<br><br>Misc. No. 08-0442 (TFH) |

**MEMORANDUM OPINION**

Petitioner Omar Khadr ("petitioner" or "Khadr") is a 22-year-old detainee at the United States Naval Base in Guantánamo Bay, Cuba, who has been held in United States custody since the age of fifteen.[1]  On January 26, 2009, petitioner is scheduled to be tried by a military commission for alleged criminal violations of the law of war.  Currently before the Court is petitioner's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56 based on the fact that he was a juvenile at the time of his capture.  By his motion, petitioner asks the Court to grant a writ of habeas corpus, permanently enjoin his trial by military commission, and order his outright release or, alternatively, order him released from adult detention and placed into an appropriate rehabilitation and reintegration program for juvenile detainees.  Respondents ("the

---

[1] At the October 30, 2008 motions hearing, petitioner's counsel agreed that it is now proper to use petitioner's full name rather than his initials, as has been the previous practice of the parties throughout this litigation, because petitioner is now an adult and the privacy considerations of Local Civil Rule 5.4(f)(2) no longer apply.

-1-

Government") have filed a cross-motion to dismiss petitioner's habeas case without prejudice or to hold the petition in abeyance pending the completion of military commission proceedings. Upon careful consideration of the motions, the parties' several memoranda, the arguments advanced at the motions hearing held on October 30, 2008, the applicable law, and the entire record, the Court will deny petitioner's motion and will grant respondents' motion in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Omar Khadr is a Canadian citizen who was taken into United States custody in Afghanistan following a firefight in which several members of the U.S.-led coalition were killed or injured. See Resp'ts' Opp'n to Petr's Mot. ("Resp'ts' Opp'n") at 8. Petitioner was fifteen years old at the time of his capture in July 2002. See Mem. in Supp. of Pet'r's Mot. ("Pet'r's Mot.") at 7. Approximately three months after his capture, petitioner was transferred to the United States Naval Base in Guantánamo Bay, Cuba. Upon his arrival at Guantánamo, at the age of sixteen, petitioner was placed in adult detention facilities, where he remains to this day. See id. At no time during his detention has petitioner been segregated from adult detainees or afforded special treatment because he was a juvenile when initially detained. See Pet'r's Stmt. of Undisputed Material Facts in Supp. of Pet'r's Mot. ¶ 3.

In September 2004, Khadr was brought before a Combatant Status Review Tribunal ("CSRT") to determine whether he was an "enemy combatant" subject to continuing detention at Guantánamo. See Pet'r's Mot. at 8. Petitioner's CSRT concluded that he was "properly designated as an enemy combatant" because he was "a member of, or affiliated with al-Qaida." Kuebler Aff., Ex. 7. While being detained as an "enemy combatant," he was charged with war crimes and the Government referred him for trial before a military commission. See Pet'r's Mot.

at 8-9. Following the Supreme Court's decision in Hamdan v. Rumsfeld, 548 U.S. 557 (2006), and the subsequent passage of the Military Commissions Act of 2006 ("MCA"), see Pub. L. No. 109-366, 120 Stat. 2600 (2006), the Government preferred new military commission charges against petitioner in April 2007. See id. at 9. Petitioner's military commission trial is now scheduled to begin on January 26, 2009.

This action began on July 2, 2004, when Khadr filed a petition for a writ of habeas corpus -- through his grandmother as next friend -- challenging the fact of his detention and the conditions of his confinement in United States custody. With the date of his military commission trial drawing near,[2] petitioner filed the instant motion on September 10, 2008. His motion seeks a writ of habeas corpus, a permanent injunction to prevent his trial by military commission, and an order for his outright release or, alternatively, an order that he be released from adult detention and placed into a rehabilitation and reintegration program appropriate for juvenile detainees.

In response, the Government filed a cross-motion to dismiss petitioner's habeas case without prejudice or to hold the petition in abeyance pending the completion of military commission proceedings. The Government argues that because the issues presented in this habeas action overlap substantially with those presented in the ongoing criminal proceedings before the military commission, this Court should, in its discretion, abstain to allow for the resolution of those issues by the military commission, and then by appeal to the D.C. Circuit, in the first instance. See Resp'ts' Opp'n at 5. On October 30, 2008, a hearing was held on the parties' cross-motions.

---

[2] Petitioner's military commission trial was originally scheduled to begin on October 8, 2008.

**STANDARD OF REVIEW**

It is well-established that dispositive motions under the Federal Rules of Civil Procedure are appropriate in habeas proceedings.  See, e.g., Jackson v. Harrison, No. 05-1969, 2006 WL 3313300 (D.D.C. Nov. 14, 2006); United States ex. rel. New v. Rumsfeld, 350 F. Supp. 2d 80 (D.D.C. 2004); Whitaker v. Meachum, 123 F.3d 714 (2d Cir. 1997).  Under Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings shall be granted if the moving party demonstrates that "no material fact is in dispute and that it is entitled to judgment as a matter of law."  Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992) (internal quotation omitted).  Similarly, summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Resolving a motion to stay or to hold a matter in abeyance pending the outcome of a related or parallel proceeding turns upon the unique circumstances of the case, and is largely a matter of discretion for the court.  A court may grant such a motion if it finds that "[i]n the interest of judicial economy and avoiding unnecessary litigation" a stay is appropriate.  Al-Anazi v. Bush, 370 F. Supp. 2d 188, 199 (D.D.C. 2005); Al Shabany v. Bush, No. 05-2029, 2005 WL 3211407, at *2 (D.D.C. Nov. 17, 2005).

**DISCUSSION**

The parties agree that only pure matters of law are at issue here as there are no material facts in dispute that bear upon the motions.  Petitioner's motion sets forth three principal claims.  He first argues that his upcoming trial before a military commission convened pursuant to the MCA is unlawful because the MCA does not confer personal jurisdiction to try juveniles.  See

Pet'r's Mot. at 24-35.  Next, petitioner asserts that his detention as an "enemy combatant" is unlawful because under U.S. law and the law of war a juvenile cannot be a "member," "affiliate," or "associate" of an armed group such as al-Qaeda, and that is the Government's sole stated basis for detaining him.  See id. at 36-41.  Finally, petitioner argues that even if there is some lawful basis for his detention, he cannot be detained -- as he has been since capture -- as an adult because he was a juvenile at the time of capture and the law of war requires that he be placed in a rehabilitation and reintegration program appropriate for former child soldiers.  See id. at 41-44.

Urging the Court not to reach the merits of Khadr's claims, the Government argues that his motion fails for two threshold reasons -- Congress stripped this Court of jurisdiction to hear the motion and, even if this Court had jurisdiction, it would be required to abstain under the well-established principles of Schlesinger v. Councilman, 420 U.S. 738 (1975).  See Resp'ts' Opp'n at 10-27.  After careful consideration, the Court agrees that these two threshold issues are fatal to petitioner's motion.[3]  The Court concludes that Councilman abstention is appropriate with respect to petitioner's first two claims[4] and that, with respect to his final claim, the Court lacks jurisdiction to hear the claim because it relates to the conditions of petitioner's confinement, not to the fact of his detention, see 28 U.S.C. § 2241(e)(2).

---

[3] To the extent that petitioner seeks relief in the form of a permanent injunction to prevent his military commission trial, he seeks this remedy purely "as a form of habeas relief," Pet'r's Reply at 23; hence, the same abstention and jurisdictional considerations that resolve petitioner's motion eliminate any need to address the sub-issue of injunctive relief.

[4] The Government also argues that the Court lacks jurisdiction to hear petitioner's motion under 10 U.S.C. § 950j(b).  See Resp'ts' Opp'n at 10-21.  As the Government also notes, however, the Court need not reach the jurisdictional question under section 950j(b) if it decides that it should abstain.  Id. at 21 n.6.  The Court agrees and declines to reach the jurisdictional question.

## I.   <u>Councilman</u> Abstention is Appropriate With Respect to Petitioner's First and Second Claims.

In <u>Schlesinger v. Councilman</u>, the Supreme Court reaffirmed the general rule "that federal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted." 420 U.S. at 758. <u>Councilman</u> identified two principal comity-based considerations that normally preclude a federal court from intervening in a pending military court proceeding. <u>See</u> <u>New v. Cohen</u>, 129 F.3d 639, 643 (D.C. Cir. 1997). First, military discipline and the efficient operation of the military itself are best served if the military justice system acts without regular interference from civilian courts. <u>See</u> <u>Hamdan</u>, 548 U.S. at 586 (discussing <u>Councilman</u>). Second, federal courts should respect the balance that Congress struck between military preparedness and fairness to individual service members charged with military offenses by "creat[ing] an integrated system of military courts and review procedures, a critical element of which is [review by] civilian judges 'completely removed from all military influence or persuasion.'" <u>Councilman</u>, 420 U.S. at 758.

As an initial matter, abstention is appropriate only to the extent that this Court's consideration of petitioner's motion would interfere with the military commission proceeding; hence, the scope of that proceeding is critical to the analysis. After briefing and argument at the October 30, 2008 motions hearing, it appears that the parties are in agreement that petitioner's first and second claims have been, will be or, at the very least, can be raised in the military commission proceeding and the subsequent appeals process. Petitioner's first claim -- his challenge to the jurisdiction of the military commission to try him because he was captured as a juvenile -- has already been raised before the military commission, and even if not raised again during trial, it will be subject to review on appeal. <u>See</u> <u>Khadr v. United States</u>, 529 F.3d 1112,

1119 (D.C. Cir. 2008) (observing that Khadr will have opportunity to challenge the military commission's jurisdictional findings in a post-judgment appeal if necessary). As for petitioner's second claim -- his challenge to the lawfulness of his detention as an "enemy combatant" -- he conceded at the motions hearing that, although it has not been raised to date, the question of enemy combatancy can be raised in the military commission proceeding. See Mot. Hr'g Tr. 115-16, Oct. 30, 2008. Consequently, Councilman abstention would seem appropriate with respect to these two claims because any rulings by this Court on those claims would necessarily affect, and possibly interfere with, the military commission proceeding.

Given that petitioner's first two claims are within the purview of Councilman, the Court finds that one of the doctrine's principal comity-based considerations -- respect for a congressionally-authorized military court system that includes independent review by civilian judges -- is present here and would normally require abstention.[5] Comity requires federal courts to give "due respect to the autonomous military judicial system created by Congress."[6] New, 129 F.3d at 643. The system established by the MCA is worthy of such respect because it provides that petitioner "is to face a military commission . . . designed . . . by a Congress that . . . acted according to guidelines laid down by the Supreme Court." Hamdan v. Gates, 565 F. Supp. 2d 130, 136 (D.D.C. 2008) (quoting Hamdan v. Rumsfeld, 464 F. Supp. 2d 9, 18 (D.D.C. 2006)).

---

[5] Because Khadr is not a member of the U.S. military, the first Councilman consideration -- military discipline -- is inapposite here.

[6] Although Councilman itself acknowledged this comity-based consideration in the context of a military justice system designed by Congress to try members of the U.S. military, the consideration is equally, if not more, relevant when Congress designs a military justice system to try alien unlawful enemy combatants. In either event, however, respect is owed to Congress and the military justice system it created -- the identity of those subject to the system is of no great moment.

Moreover, the MCA gives petitioner an appeal as of right to the D.C. Circuit, see 10 U.S.C. § 950g; hence, direct review of the military commission's final judgment is entrusted to Article III judges who are unquestionably "removed from all military influence or persuasion" as Councilman requires. See 420 U.S. at 758.

## II.     The Status-Based Exception to Councilman Does Not Apply Here.

Because abstention would normally be appropriate here, the Court must next inquire whether there is an exception to the Councilman abstention doctrine that overrides the normal practice. One such exception may apply when a petitioner "raise[s] substantial arguments that a military tribunal lacks personal jurisdiction over [him]." Hamdan, 548 U.S. at 589 n.20. Councilman, and the cases that preceded it, established that an exception to abstention for a "substantial argument" regarding the jurisdiction of the military court requires a petitioner to present a "constitutional question [that] turn[s] on the status of the persons as to whom the military asserted its power." Councilman, 420 U.S. at 759. In the pre-Councilman cases that gave shape to the exception, the petitioners argued that Congress had no constitutional power to subject them to the jurisdiction of military courts due to their "status" as civilians. See Noyd v. Bond, 395 U.S. 683 (1969); McElroy v. United States ex rel. Guagliardo, 361 U.S. 281 (1960); Reid v. Covert, 354 U.S. 1 (1957); United States ex rel. Toth v. Quarles, 350 U.S. 11 (1955). In those cases, "[t]he issue presented concerned not only the military court's jurisdiction, but also whether under Art. I Congress could allow the military to interfere with the liberty of civilians even for the limited purpose of forcing them to answer to the military justice system." Councilman, 420 U.S. at 759. Thus, the Supreme Court recognized the need for an exception because it "did not believe that the expertise of military courts extended to the consideration of constitutional claims of the type presented." Id. (quoting Noyd, 395 U.S. at 696 n.8).

Petitioner argues that his case is precisely the type that falls within the status-based exception to Councilman because he is challenging the "right of the military to try [him] at all," id., based on his "status" as a juvenile at the time of his capture.[7]  See Pet'r's Mot. at 16-19. Specifically, petitioner contends that "the MCA cannot, consistent with long-standing military practice and precedent, U.S. law, and U.S. treaty obligations, be construed to confer jurisdiction over juveniles." Id. at 17.  In response, the Government asserts that the exception is inapplicable here because petitioner's challenge does "not concern whether Congress has the 'constitutional power' to subject Khadr to trial by military commission." Resp'ts' Reply at 5.  Thus, the Government takes the position -- in line with the original rationale set forth in Councilman -- that petitioner's challenge must be constitutionally-based in order to be considered "substantial" and justify an exception to the normal practice of abstention.  At the motions hearing, petitioner's counsel conceded that Khadr's status-based challenge is statutory rather than constitutional in nature, but argued that the challenge to the military commission's jurisdiction is "substantial" nonetheless.  In support of his position, petitioner relies primarily upon the Supreme Court's decision in Hamdan v. Rumsfeld, and two earlier cases cited by the Court in Hamdan -- Ex parte Quirin, 317 U.S. 1 (1942), and In re Yamashita, 327 U.S. 1 (1946).  See Pet'r's Mot. at 16-19; Pet'r's Reply at 12-14.

The Court concludes that Hamdan does not establish that petitioner's challenge is a "substantial" one that triggers the narrow, status-based exception to Councilman.  Unlike this

---

[7] This is now the fourth time that petitioner has challenged the jurisdiction of the military commission to try him.  The three previous unsuccessful challenges include one brought directly before the military judge, see Resp'ts' Opp'n at 8-9 & Resp'ts' Ex. A (denying motion to dismiss), and two brought before the D.C. Circuit, see Khadr v. Gates, No. 07-1156, Order (D.C. Cir. May 30, 2007) (denying emergency motion to stay military commission proceedings); Khadr v. United States, 529 F.3d 1112 (D.C. Cir. 2008) (dismissing petition for lack of jurisdiction).

case, in Hamdan the Court determined that abstention was entirely unwarranted in the first instance because the circumstances "simply do not implicate the 'obligations of comity' that, under appropriate circumstances, justify abstention." 548 U.S. at 589. "Obligations of comity" were absent in Hamdan because the petitioner there challenged a military commission convened by order of the President, not created by Congress, where the final decision of the commission was not subject to review by a civilian court.[8] Unlike a military process statutorily crafted by Congress, review by a civilian (i.e., Article III) court could not be included in this creature of the Executive Branch. The Supreme Court accordingly held that abstention was inappropriate because the military commission convened to try Hamdan "clearly lack[ed] the structural insulation from military influence," 548 U.S. at 587, that is found in "an integrated system of military courts and review procedures" that includes independent review by civilian judges, Councilman, 420 U.S. at 758.[9]

Hence, there was no reason to abstain in Hamdan in the first instance, and so the Court never ruled on the applicability of the status-based exception.[10] Moreover, Hamdan is silent with

---

[8] Department of Defense Military Commission Order No. 1, the Order at issue in Hamdan, provided that if convicted by military commission, Hamdan's conviction would be reviewed by a panel consisting of three military officers designated by the Secretary of Defense. Any appeal of the review panel's decision could be made exclusively to the Secretary of Defense, and then, finally, to the President. See id. at 587.

[9] Quirin and Yamashita are similarly distinguishable for the same reason -- the military commissions challenged in those cases were neither convened pursuant to an Act of Congress, nor did they provide for any post-commission review by a civilian court. See 317 U.S. at 9 (discussing the scope of the President's order convening the military commission and the Government's contention that "petitioners must be denied access to the courts"); 327 U.S. at 8 (acknowledging that rulings and judgments of the military commission convened by a U.S. Army General to try Yamashita were solely "reviewable by the military authorities").

[10] In dictum, the Supreme Court observed that "it appears that the exception would apply here" because Hamdan raised a "substantial argument" that the military commission convened to

respect to the constitutional underpinnings of the status-based exception.[11]  Petitioner essentially relies upon Hamdan for the unstated proposition that a status-based jurisdictional challenge can be "substantial" without raising a constitutional question.  But Hamdan says no such thing, even in dicta.

The limits of the status-based exception were mapped out clearly in Councilman and they have not been altered or expanded by subsequent precedent.  Since Councilman was decided, few cases have even considered the status-based exception,[12] and those that have considered it have not focused on its constitutional basis.  See, e.g., New, 129 F.3d at 644; Hamdan, 565 F. Supp. 2d at 136-137.  However, the scope of the status-based exception cannot be assessed properly without considering its constitutional dimension because the exception was born of a recognition that military courts lacked the expertise to decide certain threshold constitutional questions.  See Councilman, 420 U.S. at 759; Noyd, 395 U.S. at 696 n.8.  In the judgment of the Supreme Court in Councilman, such questions were better left to civilian judges; hence, the normal practice of abstention in the face of a pending military court proceeding is subject to a narrow exception when a habeas petitioner presents a "constitutional question [that] turn[s] on

---

try him pursuant to an order of the President was inconsistent with the requirements of the Geneva Conventions "and thus lack[ed] jurisdiction over him." 548 U.S. at 589 n.20.  The Court gave no further explanation for its passing observation that Hamdan raised a "substantial argument."

[11] Quirin and Yamashita are also unhelpful on this issue.  As the Government argued at the motions hearing, these cases do not directly address the abstention question presented by the instant case, in part because they pre-date cases like Councilman and Younger v. Harris, 401 U.S. 37 (1971), that set forth the governing principles of the abstention doctrine.  In any event, neither Quirin nor Yamashita involved a challenge to the authority of a military commission based on the "status" of the prisoners to be tried.

[12] At the motions hearing, petitioner's counsel could cite no post-Councilman authority, other than Hamdan, to support his position that the status-based exception should apply here.

the status of the persons as to whom the military asserted its power." Councilman, 420 U.S. at 759. That is simply not the situation that petitioner presents here, and Hamdan represents no expansion of that narrow exception. Therefore, the Court concludes that petitioner's challenge to the jurisdiction of the military commission does not raise a substantial constitutional challenge based on status within the narrow exception to Councilman abstention.

Hence, the Court will grant the Government's motion in part. Consistent with its abstention ruling, the Court will hold Khadr's habeas petition in abeyance only to the extent that it raises issues that have been, will be, or can be raised in the military commission proceeding and the subsequent appeals process. The Court concludes that a partial grant of the Government's motion is appropriate here for the foregoing reasons and "[i]n the interest of judicial economy and avoiding unnecessary litigation." Al-Anazi v. Bush, 370 F. Supp. 2d at 199; Al Shabany v. Bush, 2005 WL 3211407, at *2.

### III. Under 28 U.S.C. § 2241(e)(2), the Court Lacks Jurisdiction to Consider Petitioner's Challenge to His Confinement as an Adult.

Petitioner's final claim is a challenge to his confinement at Guantánamo as an adult. Specifically, he challenges the authority of the President to detain him as an adult, pursuant to the Authorization for Use of Military Force ("AUMF"), see Pub. L. No. 107-40, 115 Stat. 224 (2001), because he was only fifteen years old at the time of his capture. Petitioner argues that the AUMF does not authorize his detention as an adult because detention of a former child soldier in this manner is inconsistent with the law of war, specifically the Optional Protocol to the Convention on the Rights of the Child on the Involvement of Children in Armed Conflict ("Child Soldier Protocol"), 2000 WL 33366017, S. Treaty Doc. No. 106-37A (ratified June 18, 2002). See Pet'r's Mot. at 41-44. Before turning to the merits of petitioner's challenge, however,

the Court must determine whether it has jurisdiction over this claim.

It is undisputed that the issue of petitioner's confinement as an adult will not be raised in the military commission proceeding. Consequently, Councilman abstention does not apply because comity-based considerations are inapposite. Likewise, the jurisdictional limitation found in 10 U.S.C. § 950j(b) does not apply here because it bars courts only from hearing "any claim or cause of action whatsoever . . . relating to the prosecution, trial, or judgment of a military commission" under the MCA. Because petitioner's challenge to his confinement as an adult is entirely independent from the "prosecution, trial, or judgment of a military commission," section 950j(b) does not deprive the Court of jurisdiction.

Nonetheless, the federal habeas statute, specifically 28 U.S.C. § 2241(e), still presents a potential jurisdictional roadblock to petitioner's challenge. Under section 2241(e)(1), "[n]o court . . . shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States . . . as an enemy combatant." Similarly, section 2241(e)(2) removes "jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States . . . as an enemy combatant."

The Supreme Court's decision in Boumediene v. Bush, 128 S. Ct. 2229 (2008), re-calibrated the impact of section 2241(e) by invalidating, at least in part, the categorical jurisdictional bar on habeas actions brought by or on behalf of detainees held as enemy combatants. Boumediene held that section 2241(e) "operates as an unconstitutional suspension of the writ." 128 S. Ct. at 2240. In practical terms, the Supreme Court's holding means that Guantánamo detainees "are entitled to the privilege of habeas corpus to challenge the legality of

-13-

their detention." Id. at 2262. The Supreme Court stressed that "[t]he only law we identify as unconstitutional is MCA § 7, 28 U.S.C.A. § 2241(e) (Supp.2007)," id. at 2275, and added that "[i]n view of our holding we need not discuss the reach of the writ with respect to claims of unlawful conditions of treatment or confinement," id. at 2274.

Although Boumediene declared that section 2241(e) is unconstitutional, it did not specify what portion of the statute, if any, remains in effect. Because section 2241(e)(1) purports to strip courts of jurisdiction to hear "an application for a writ of habeas corpus," and Boumediene held that those detained as enemy combatants are entitled to "challenge the legality of their detention" through constitutional habeas, id. at 2262, it is clear that, at a minimum, subsection (e)(1) was invalidated. But this leaves open the question whether Boumediene also invalidated subsection (e)(2). This Court is well aware that courts must "refrain from invalidating more of the statute than is necessary whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional." Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987) (internal alterations and quotations omitted).

With this mandate in mind, the Boumediene Court's pronouncement that it "need not discuss the reach of the writ with respect to claims of unlawful conditions of treatment or confinement," id. at 2274, supports the conclusion that the Supreme Court meant only to invalidate subsection (e)(1). Claims relating to "conditions of treatment or confinement" fall squarely within the jurisdictional bar of section 2241(e)(2), and by excluding such claims from the scope of its analysis the Supreme Court appears to have left that subsection undisturbed. Thus, in the wake of Boumediene, two members of this Court have had occasion to consider this very issue and both reached the same conclusion -- Boumediene invalidated (e)(1), but left (e)(2) intact. See In re Guantanamo Bay Detainee Litigation, No. 04-1254, 2008 WL 4294304 at *2

(D.D.C. Sept. 22, 2008) (Hogan, J.) ("Cognizant of the long-standing rule of severability, this Court, therefore, holds that [section 2241(e)(2)] remains valid . . . ."); In re Guantanamo Bay Detainee Litigation, 570 F. Supp. 2d 13, 18 (D.D.C. 2008) (Urbina, J.) ("[T]his court interprets Boumediene to invalidate only 28 U.S.C. § 2241(e)(1)."). This Court agrees, and concludes that in permitting detainees held as enemy combatants to bring constitutional habeas corpus challenges to "the legality of their detention," 128 S. Ct. at 2262, Boumediene invalidated only section 2241(e)(1), but not section 2241(e)(2). And under (e)(2), the jurisdictional bar remains intact for "conditions of confinement" challenges.

Turning back to the claim in this case, the Court must next determine whether petitioner has brought the type of challenge still permitted after Boumediene -- a challenge to the legality of his detention. In Munaf v. Geren, 128 S. Ct. 2207 (2008), decided the same day as Boumediene, the Supreme Court wrote: "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." 128 S. Ct. at 2221 (citation omitted). The type of "core" habeas action described in Munaf is the same one permitted by Boumediene -- a challenge to unlawful detention seeking outright release from custody. By contrast, "non-core habeas claims [are] claims for remedies other than release from unlawful detention." In re Guantanamo, 2008 WL 4294304 at *1. These non-core habeas claims include those still barred by section 2241(e)(2) "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of a detainee held as an enemy combatant.

As petitioner states clearly in his reply brief, he "has not moved for complete release, but only release from adult detention and placement in a rehabilitation or reintegration program in Canada or under the control of the United States." Pet'r's Reply at 33 (emphasis in original). Thus, to find that petitioner's challenge evades section 2241(e)(2)'s continuing jurisdictional bar,

the Court must conclude that a request for a remedy that stops short of outright release is nonetheless a core habeas claim.  The Government argues that petitioner has in fact raised only a non-core habeas claim seeking to change his "conditions of confinement" that is barred under section 2241(e)(2).  See Resp'ts' Reply at 10-11 n.3.  At the motions hearing, however, petitioner's counsel resisted the notion that Khadr's challenge relates to his "conditions of confinement" by arguing that he has sought a quantum change in the level of custody, which is akin to a claim for release and hence within the core of habeas.

There is some general support for petitioner's position that his challenge implicates the core of the writ.  See Preiser v. Rodriguez, 411 U.S. 475, 486 (1973) (habeas is the proper remedy when a prisoner is "unlawfully confined in the wrong institution"); Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991) (habeas is the proper remedy when a prisoner seeks "a quantum change in the level of custody"); Miller v. Overholser, 206 F.2d 415, 420 (D.C. Cir. 1953) ("the writ is available to test the validity not only of the fact of confinement but also of the place of confinement").  Nonetheless, the Court concludes that in his third challenge petitioner has raised a non-core habeas claim relating to "conditions of confinement."  Ultimately, this determination turns on the nature of the relief sought by petitioner.  Although he contends that his challenge amounts to a claim for "release" from adult detention, the Court is not persuaded by this characterization.

The case law supports this conclusion.  Preiser v. Rodriguez teaches that a prisoner invokes the traditional core of the writ when he "challeng[es] the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment."  411 U.S. at 500.  When a prisoner does not seek to end or shorten the "fact or duration" of his imprisonment, courts have found that

habeas corpus may not be available. In <u>Graham v. Broglin</u>, the Seventh Circuit considered whether habeas corpus was available "where the prisoner is seeking not earlier freedom, but transfer from a more to a less restrictive form of custody." 922 F.2d at 381. The <u>Graham</u> court wrote that habeas is the proper remedy if a prisoner seeks "outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation." <u>Id.</u> However, <u>Graham</u> went on to observe that if a prisoner "is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement," and habeas is not the proper vehicle for his claim. <u>Id.</u> <u>Graham</u> ultimately held that a prisoner's challenge to the denial of his application for work release was a challenge to the conditions rather than the fact of his confinement, and hence not cognizable as a core habeas action.

Two recent decisions of this Court concerned claims brought by Guantánamo detainees that did not seek to end or shorten the "fact or duration" of imprisonment. In the first case, Judge Urbina considered a request for an order requiring an on base transfer of certain detainees to a less restrictive location within Guantánamo. See <u>In re Guantanamo</u>, 570 F. Supp. 2d at 15-16. In the second case, Judge Hogan considered a request for an order requiring that a detainee be provided with a blanket and a mattress in his cell. See <u>In re Guantanamo</u>, 2008 WL 4294304 at *1. Both judges concluded that the claims related to the petitioners' "detention, transfer, treatment, trial, or conditions of confinement," 28 U.S.C. § 2241(e)(2), and Judge Hogan also held that, as a result, he had "no jurisdiction to hear the claim" under section 2241(e)(2), <u>In re Guantanamo</u>, 2008 WL 4294304 at *2.

Certainly Khadr's requested relief comes closer to implicating the core of the writ than

does a request for a blanket and a mattress.  But it is not substantially different than a request for an on base transfer to a less restrictive detention facility.  See In re Guantanamo, 570 F. Supp. 2d at 15-16.  In its essence, the relief sought by petitioner under his third claim is programmatic.  He acknowledges that if his request is granted his detention would not end, but rather he would be "placed into a rehabilitation and reintegration program consistent with the requirements of the Child Soldier Protocol."  Pet'r's Mot. at 44.  Petitioner envisions that this hypothetical "rehabilitation and rehabilitation program" will "promote physical and psychological recovery and social reintegration . . . in an environment which fosters [his] health, self-respect, and dignity."  Id. at 43 (quoting Convention on the Rights of the Child, Nov. 20, 1989, art. 39, 1577 U.N.T.S. 3).  Petitioner's challenge speaks to the identity of those with whom he is detained (adults or juveniles), and the underlying purpose of his detention (penological or rehabilitative).  The details of petitioner's request make clear that he is not challenging "the very fact or duration of his physical imprisonment," nor is he seeking "a determination that he is entitled to immediate release or a speedier release from that imprisonment."  Preiser, 411 U.S. at 500; see also Pet'r's Reply at 33 ("Petitioner has not moved for complete release." (emphasis in original)).  The Court concludes, then, that petitioner's requested relief -- a transfer from adult detention into a rehabilitation and reintegration program for juveniles -- is not tantamount to a request for outright release and is more accurately characterized as a request "seeking a different program or location or environment," Graham, 922 F.2d at 381.  Such a challenge does not implicate the core of the writ -- the fact or duration of confinement -- but instead relates solely to Khadr's "detention, transfer, treatment, trial, or conditions of confinement," and hence is barred by

section 2241(e)(2).[13]

## CONCLUSION

For the foregoing reasons, the Court will deny petitioner's motion for judgment on the pleadings or, in the alternative, for summary judgment and will grant in part respondents' motion to hold the petition in abeyance pending the completion of military commission proceedings. A separate order accompanies this memorandum opinion.

       /s/ John D. Bates
       JOHN D. BATES
       United States District Judge

Dated: November 24, 2008

---

[13] At the motions hearing, petitioner argued, without citation to supporting authority, that a ruling to this effect would constitute an unconstitutional suspension of the writ. Because the Court has concluded that petitioner's claim does not implicate the core of the writ, the jurisdictional bar imposed by section 2241(e)(2) does not raise the same Suspension Clause concerns addressed in Boumediene.