# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OMAR KHADR,<br><br>Petitioner,<br><br>v.<br><br>BARACK H. OBAMA, et al.,<br><br>Respondents. | Civil Action No. 04-1136 (JDB)<br><br>Misc. No. 08-0442 (TFH) |

## MEMORANDUM OPINION

The Court, and the parties, are by now familiar with the facts animating this action. See Khadr v. Bush, 587 F. Supp. 2d 225, 227-29 (D.D.C. 2008) [hereinafter Khadr I]; see also Khadr v. United States, 529 F.3d 1112, 1114-15 (D.C. Cir. 2008) [hereinafter Khadr II]. Omar Khadr has been incarcerated since 2002 at the United States Naval Base in Guantánamo Bay, Cuba, after his capture as a juvenile during a firefight in Afghanistan in which several members of the U.S.-led coalition were killed or injured. See Khadr I, 587 F. Supp. 2d. at 228. In 2004, he filed a habeas petition with this Court. While that petition was pending, Khadr was brought before a Combatant Status Review Tribunal, which designated him as an enemy combatant. See id. The government subsequently charged him with war crimes and referred him for trial before a military commission. See id. That trial is set to begin on August 10, 2010.[1]

In light of the parallel military commission proceedings, and relying on Schlesinger v. Councilman, 420 U.S. 738 (1975), the Court previously abstained from resolving Khadr's habeas

---

[1] The proceeding was originally scheduled to begin on October 8, 2008, but has been continued several times. See Khadr I, 587 F. Supp. 2d at 228-29 & n.2.

petition, and therefore stayed the action. See Khadr I, 587 F. Supp. 2d at 231. The Court observed that the claims in Khadr's petition "have been, will be, or, at the very least, can be raised in the military commission proceeding and the subsequent appeals process." Id. at 230-31. Because comity requires federal courts to give "due respect to the autonomous military judicial system created by Congress," New v. Cohen, 129 F.3d 639, 643 (D.C. Cir. 1997), the Court concluded that it must stay Khadr's petition pending the end of military commission proceedings and the subsequent appeals process, Khadr I, 587 F. Supp. 2d at 234.[2]

Faced once again with an impending military commission trial, Khadr now seeks leave to file a second amended habeas petition, which, according to him, raises claims that no longer warrant "a stay or abstention under Councilman." Pet'r's Mem. in Supp. of Mot. for Leave to File ("Pet'r's Habeas Mem.") [Docket Entry 297], at 1. That petition asks, among other things, for this Court to enjoin the military commission's proceedings against Khadr, see Proposed Second Amended Habeas Pet. [Docket Entry 298], Prayer ¶ 5, and to "order Respondents to release Petitioner from his current unlawful detention," id. at ¶ 1. Khadr also asks the Court to lift the stay. See Pet'r's Mem. in Supp. of Mot. to Lift the Stay ("Pet'r's Stay Mem.") [Docket Entry 305], at 2.

Upon careful consideration of the motions, the parties' several memoranda, the applicable law, and the entire record herein, the Court will grant Khadr's motion for leave to file his second amended habeas petition, but will deny his motion to lift the stay.

---

[2] The Court also dismissed Khadr's argument "that even if there is some lawful basis for his detention, he cannot be detained . . . as an adult because he was a juvenile at the time of capture." Khadr, 587 F. Supp. 2d at 229-30. It found that this argument was a "non-core habeas claim relating to 'conditions of confinement'" and therefore was barred by statute. Id. at 236.

# I.

Khadr may amend his petition for habeas corpus "under the terms set by [Federal Rule of Civil Procedure] 15(a)." United States v. Hicks, 283 F.3d 380, 386 (D.C. Cir. 2002). Under that rule, "leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." Richardson v. United States, 193 F.3d 545, 549 (D.C. Cir. 1999); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend the complaint] when justice so requires"). Rule 15(a)'s "'permissive approach' . . . applies with equal force to" motions to amend a habeas petition. Hicks, 283 F.3d at 386.

Khadr contends that his second amended habeas petition satisfies Rule 15(a) because it "address[es] substantive changes to the law," "reflects newly discovered evidence," and "includes recent developments as to [Khadr's] pending military trial," all of which "substantially affect the court's jurisdiction over the case and the merits of [Khadr's] arguments." Pet'r's' Habeas Mem. at 3-4. Permitting him to file his new habeas petition, he urges, would not unduly prejudice the government "because the amendments are timely and made in response to recent changes in the law." Id. at 4.

The government does not challenge Khadr's contention that his proposed habeas petition addresses new evidence and new law, or that permitting it would not be prejudicial. Rather, the government asserts that "any amendment to include Petitioner's new allegations would be futile because the Second Amended Petition would independently support abstention under Councilman." Resp'ts' Opp'n to Pet'r's Habeas Mot. ("Resp'ts' Habeas Opp'n") [Docket Entry 301], at 4; see also id. at 3 ("Petitioner's habeas case in this Court remains fully subject to the

Stay Order, and there is no basis for seeking to amend his Petition while the stay remains in effect.").

The government paints futility with too broad a brush. A motion to amend a complaint is futile "if the proposed claim would not survive a motion to dismiss," James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996), or if there is "little chance" the plaintiff would succeed on his claim, Willoughby v. Potomac Elec. Power Co., 100 F.3d 999, 1003 (D.C. Cir. 1996). Here, the government does not contend that Khadr's habeas petition merits dismissal, but instead only suggests that it should be stayed under Councilman. See Resp'ts' Habeas Opp'n at 3-4. Further, "[t]he fact that the case might then be stayed . . . does not change the fact that [Khadr's] proposed amendment creates a viable cause of action on which he may proceed." Kelly v. Barreto, Civ. A. No. 05-0900, 2006 WL 2568443, at *2 (D.D.C. Sept. 5, 2006); see also Kane v. Rose, 259 Fed. Appx. 258, 260-61 (11th Cir. 2007) ("It is apparent . . . that [a] stay does not render [a party's] claims futile for all time.") That is, even if a military commission addresses the arguments in Khadr's habeas petition in the first instance, this Court nevertheless also may have an opportunity to do so in a habeas proceeding following the conclusion of the military commission proceedings. See Al-Odah v. Bush, 593 F. Supp. 2d 53, 60 (D.D.C. 2009).[3] Accordingly, the Court will grant Khadr leave to file his proposed second amended habeas petition.

---

[3] If Khadr's habeas petition were futile, Khadr would be unable to refile it even after the end of the military commission proceedings. But the government implicitly recognizes that this is not the case: "Respondents . . . would not oppose a denial without prejudice to Petitioner's refiling his motion for leave to file an amended habeas petition, if appropriate, should the stay be lifted once the pending military commission proceedings against Petitioner and any subsequent appeal as of right to the D.C. Circuit have been completed." Resp't's Habeas Opp'n at 6.

## II.

The Court next turns to whether Khadr's second amended habeas petition warrants abstention under Councilman. The claims in that petition both replicate and supplement the claims Khadr raised in his first amended habeas petition, for which the Court found Councilman abstention appropriate.

"[F]ederal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted." Councilman, 420 U.S. at 758; see also Al Odah, 593 F. Supp. 2d at 57 ("Courts ordinarily abstain from considering habeas petitions or requests for other equitable relief prior to the conclusion of a defendant's criminal proceedings."). This is so because "implicit in the Congressional scheme" creating the military court system is the view that the "system generally is adequate to and responsibly will perform its assigned task." Councilman, 420 U.S. at 758; see also id. at 759-60 ("We see no injustice in requiring respondent to submit to a system established by Congress and carefully designed to protect not only military interests but his legitimate interests as well."). Abstention, then, ensures that federal courts respect Congress's decision to "create[] an integrated system of military courts and review procedures." Id. at 758.[4]

## A.

As an initial matter, Khadr contends that Councilman is inapplicable to his second amended habeas petition because Congress has demonstrated its intent for district courts to hear

---

[4] Councilman also recognized that military discipline and the efficient operations of the military itself are best served if the military court system acts without regular interference from civilian courts. See Councilman, 420 U.S. at 752, 757. Because Khadr is not a member of the U.S. military, this consideration is inapposite here.

habeas petitions brought by detainees prior to the start of military commission proceedings. See Pet'r's Stay Mem. at 5. According to him, "[w]hen this Court last considered the Councilman issue . . . , Congress had codified the military commission system and expressly limited judicial review of military commission proceedings to post-conviction appellate review before the D.C. Circuit." Id. (citing Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (2006) (codified at 10 U.S.C. §950j(b)).[5] But the Military Commissions Act of 2009, Pub. L. No. 111-84, 123 Stat. 2190 (2009) -- which amended the Military Commissions Act of 2006 -- removed section 950j(b). Khadr therefore contends that the Military Commissions Act of 2009 "evinces Congressional intention for civilian courts to hear claims arising out of the military commission process." Pet'r's Stay Mem. at 6.[6]

This is incorrect. Section 950j(b) actually only dealt with the review of military commission proceedings, not with habeas jurisdiction. But even if by removing section 950j(b) Congress gave district courts the jurisdiction to hear habeas petitions brought by detainees facing military commission proceedings, that is of no help to Khadr here. Whether this Court has jurisdiction to hear Khadr's habeas petition is entirely separate from whether Councilman

---

[5] The Court did not reach the question whether section 950j(b) precluded it from considering Khadr's habeas petition when it previously stayed that petition. See Khadr, 587 F. Supp. 2d at 230 n.4.

[6] Khadr also asserts that by eliding section 950j(b), Congress has put Khadr in the same position as the petitioner in Hamdan v. Rumsfeld (Hamdan I), 548 U.S. 557 (2006), for whom Councilman abstention did not bar his habeas petition. See Pet'r's Stay Mem. at 6. Not so. Councilman abstention was unavailable in Hamdan I because "neither of the comity considerations identified in Councilman weigh[ed] in favor of abstention." Hamdan I, 548 U.S. at 587. Most tellingly, "the tribunal convened to try Hamdan [was] not part of the integrated system of military courts, complete with independent review panels, that Congress has established." Id. Accordingly, Hamdan I is inapposite to Khadr's challenge.

abstention is appropriate. Indeed, Councilman provides a ready-response to Khadr's argument: "Our holding that the District Court had subject-matter jurisdiction . . . does not carry with it the further conclusion that the District Court properly could reach the merits of Councilman's claim." Councilman, 420 U.S. at 754. This is so because abstention is "a question concerned, not with the limited jurisdiction conferred on the federal courts, but with whether consistently with the principles governing equitable relief the court may exercise its remedial powers." Id. Hence, even if the Military Commissions Act of 2009 could be read to grant the Court jurisdiction to hear pre-conviction habeas petitions brought by detainees subject to military commission proceedings, the Court still must assess whether exercising that power is consistent with the respect due to a congressionally-created military court system.

### B.

Councilman "abstention is appropriate only to the extent that this Court's consideration of [Khadr's second amended habeas petition] would interfere with the military commission proceeding." Khadr I, 587 F. Supp. 2d at 230. Such interference is possible where the claims raised in a habeas petition could overlap with the military commission's inquiries. See Al Odah, 593 F. Supp. 2d at 59; Khadr I, 587 F. Supp. 2d at 230. Here, Khadr does not dispute that the claims he raises in his second amended habeas petition can be raised in his military commission proceedings and the subsequent appeals process. Nor, does it seem, could he. For example, the Court concluded in its previous opinion staying this case that Khadr's challenges to the military commission's jurisdiction to try him "[h]ad already been raised before the military commission, and even if not raised again during trial, . . . will be subject to review on appeal." Khadr I, 587 F. Supp. 2d at 230-31; see also Khadr II, 529 F.3d at 1119 (Khadr will have opportunity to

challenge the military commission's jurisdictional findings in a post-judgment appeal). That is still true. And the remaining claims in Khadr's habeas petition may be litigated in the military commission. See Hamdam v. Gates (Hamdan II), 565 F. Supp. 2d 130, 137 (D.D.C. 2008) (military commission can evaluate a petitioner's challenges to charged offenses and evidence); see also Al Odah, 593 F. Supp. 2d at 59 ("The Court's proceedings may also produce rulings on the production of discovery and/or exculpatory information that diverge from those of the military commissions."). The Court therefore is persuaded that Khadr's habeas proceeding before this Court could interfere with his ongoing military commission proceeding.

Because of this potential interference, the Court would normally abstain from resolving Khadr's habeas petition given the "due respect" it owes to "the autonomous military judicial system created by Congress." New, 129 F.3d at 643; accord Councilman, 420 U.S. at 758. Indeed, "it must be assumed that the military court system will vindicate [Khadr's] constitutional rights." Councilman, 320 U.S. at 758.[7] Khadr contends, however, that here this "assumption is unwarranted." Pet'r's Reply in Supp. of Mot. to Lift Stay ("Pet'r's Stay Reply") [Docket Entry 309], at 6. In his view, the military commission convened to try him is unconstitutional because it does not have procedures precisely replicating those available at civilian criminal trials. See id. at 7; see also id. at 6 (Khadr "was denied due process of law and assistance of counsel during the Combatant Status Review Tribunal").

Khadr recognizes that the Military Commissions Act of 2009 gives a defendant "[t]he

---

[7] "Although Councilman discussed this comity-based consideration in the context of a military justice system designed by Congress to try members of the U.S. military, the consideration is equally, if not more, relevant when Congress designs a military justice system to try alien unlawful enemy combatants." Khadr I, 587 F. Supp. at 231 n.6.

opportunity to obtain witnesses and evidence . . . comparable to the opportunity available to a criminal defendant in a court of the United States under Article III of the Constitution," 10 U.S.C. § 949j(a), but he criticizes the fact that the procedures are not "equal" to those available in civilian criminal trials, see Pet'r's Stay Reply at 9. For example, he offers that the Military Commissions Act of 2009 "allows the prosecution to introduce into evidence involuntary statements that [Khadr] made at or near the point of capture." Id. And he contends that he is without a "Sixth Amendment right to confront both witnesses and physical evidence used against him at trial." Id. at 8.

Khadr, however, points the Court to no authority demonstrating that a military commission's constitutionality turns on whether it offers the full panoply of protections available at civilian criminal trials. Indeed, the military court system that Councilman deemed sufficient "to vindicate servicemen's constitutional rights" itself did not include all the protections available at civilian criminal trials. See Whelchel v. McDonald, 340 U.S. 122, 126-27 (1950) ("Petitioner can gain no support from the analogy of trial by jury in the civil courts. The right to trial by jury guaranteed by the Sixth Amendment is not applicable to trials by courts-martial or military commissions."). Put simply, the system established by the Military Commissions Act of 2009 is worthy of respect "because it provides that [Khadr] 'is to face a military commission designed by a Congress that acted according to guidelines laid down by the Supreme Court.'" Khadr I, 587 F. Supp. 2d at 231 (quoting Hamdan II, 565 F. Supp. 3d at 136).

Moreover, the Constitution does not require that every protection available in criminal trials must apply in military commission proceedings for Guantánamo detainees. See Hamdan I, 548 U.S. at 623 ("The President here has determined . . . that it is impracticable to apply the rules

and principles of law that govern the trial of criminal cases in the United States district courts . . . to Hamdan's commission. We assume that complete deference is owed that determination." (internal quotation marks and citation omitted)) (plurality opinion);[8] cf. Boumediene v. Bush, 128 S. Ct. 2229, 2270 (2008) ("Habeas corpus proceedings need not resemble a criminal trial, even when the detention is by executive order."). Indeed, in the related context of habeas proceedings for Guantánamo detainees, the D.C. Circuit has concluded that habeas review "need not match the procedures developed by Congress and the courts specifically for habeas challenges to criminal convictions." Al-Bihani v. Obama, 590 F.3d 866, 876 (D.C. Cir. 2010); see also Al-Adahi v. Obama, --- F.3d ----, 2010 WL 2756551, at *9 n.6 (D.C. Cir. 2010) ("His claim that statements he made outside the presence of counsel should be suppressed also fails: Al-Adahi cites no precedent extending the Miranda v. Arizona, 384 U.S. 436 (1966), line of cases beyond the criminal context."); id. ("Al-Bihani also forecloses Al-Adahi's argument that admitting hearsay violated his Sixth Amendment right of confrontation.").

Critical to Councilman's conclusion that the military court system would vindicate a serviceman's constitutional rights was the fact that the system included review by "the Court of Military Appeals consisting of civilian judges completely removed from all military influence or persuasion." Councilman, 420 U.S. at 758 (internal quotation marks omitted); cf. Hamdan I, 548 U.S. at 587 (Councilman abstention inappropriate because the military commissions convened by the President were "not part of the integrated system of military courts, complete with

---

[8] Although this part of Justice Stevens's majority opinion garnered only four votes, the dissent endorsed this conclusion. See Hamdan I, 548 U.S. at 721 ("[T]he procedures to be employed by Hamdan's commission afford all the judicial guarantees which are recognized as indispensable by civilized peoples." (internal quotation marks omitted)) (Thomas, J., dissenting).

independent review panels that Congress had established"). Similar review is available under the Military Commissions Act of 2009: every defendant has an appeal of right to the D.C. Circuit, which has "exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission," 10 U.S.C. § 950g(a), and may consider "all matters of law, including the sufficiency of the evidence to support the verdict," id. § 950g(d).[9] Further, "the Supreme Court may review by writ of certiorari . . . the final judgment of the [D.C. Circuit]." Id. § 950g(e).

Every individual tried by a military commission, then, may obtain review of his case by "civilian judges 'completely removed from all military influence or persuasion.'" Khadr I, 587 F. Supp. 2d at 230 (quoting Councilman, 420 U.S. at 758). As the Hamdan II court explained:

> A real judge is presiding over the pretrial proceedings in Hamdan's case and will preside over the trial . . . . If the Military Commission judge gets it wrong, his error may be corrected by the [Court of Military Commission Review]. If the [Court of Military Commission Review] gets it wrong, it may be corrected by the D.C. Circuit. And if the D.C. Circuit gets it wrong, the Supreme Court may grant a writ of certiorari.

Hamdan II, 565 F. Supp. 2d at 137. The review procedures created by the Military Commissions Act of 2009 have "the structural insulation from military influence that characterizes the Court of Appeals for the Armed Forces," and thus bear sufficient "conceptual similarity to state courts to warrant invocation of abstention principles." Hamdan I, 548 U.S. at 587-88.[10] Hence, contrary

---

[9] A defendant may also first appeal to the Court of Military Commission Review, composed of three commissioned officers of the armed forces. See 10 U.S.C. § 950f. That court "may act only with respect to the findings and sentence as approved by the [military commission]," and "may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact." Id. § 950f(d).

[10] Khadr also contends that "abstention is not warranted because the military commissions do not offer the remedy of release that [Khadr] seeks in his habeas proceeding." Pet'r's Stay Mem. at 11. But the fact that "military commissions . . . are convened to consider whether [an individual has] violated the laws of war and not whether [he] should be released from custody"

to Khadr's arguments, this Court may assume that the military court system created by the Military Commissions Act of 2009 will vindicate Khadr's rights. See Councilman, 420 U.S. at 758; accord Khadr I, 587 F. Supp. 2d at 231.

### C.

Abstention is therefore warranted in this case. Nevertheless, Councilman and its progeny recognize an exception to abstention where a petitioner asserts "arguments that a military tribunal lacks personal jurisdiction over [the defendant]." Hamdan I, 548 U.S. at 589 n.20. Under Councilman, abstention is inappropriate where a petitioner presents "a constitutional question [that] turn[s] on the status of the persons as to whom the military asserted its power." Councilman, 420 U.S. at 759; accord Hamdan I, 548 U.S. at 589 (exception to Councilman abstention where defendant "raise[s] substantial arguments that a military tribunal lacks personal jurisdiction over [him]"); see also Councilman, 420 U.S. at 759 ("The issues presented concerned not only the military court's jurisdiction, but also whether under Art. I Congress could allow the military to interfere with the liberty of civilians even for the limited purpose of forcing them to answer to the military justice system.").

Here, Khadr contends that two of the claims asserted in his second amended habeas petition fall within Councilman's exception. First, he suggests that his status as a juvenile at the time of his capture in Afghanistan precludes the military commission from exercising jurisdiction

---

does not alter the abstention analysis. Al Odah, 593 F. Supp. 2d at 59 ("The Court therefore rejects Petitioners' argument that the differences between the relief sought before this Court (their release) and the military commissions (their non-conviction) distinguishes Councilman or otherwise suggests that this Court should not defer to the system of military commissions designed by Congress and the President."). Moreover, if Khadr is acquitted but remains incarcerated, as the government suggests he can be, he may challenge that continued detention through habeas.

over him. See Pet'r's Stay Reply at 13. But this Court already concluded, when Khadr raised this assertion in opposition to the government's previous motion asking the Court to abstain under Councilman, that this argument "does not raise a substantial constitutional challenge based on status within the narrow exception to Councilman abstention." Khadr I, 587 F. Supp. 2d at 234; see also id. at 232 ("At the motions hearing, petitioner's counsel conceded that Khadr's status-based challenge is statutory rather than constitutional in nature . . . ."). Khadr has offered no reason why the Court should revisit this holding.

Second, Khadr offers that Congress's creation of military commissions to try law of war violations exceeds its constitutional authority. See Pet'r's Stay Reply at 15 ("By creating the 'enemy belligerent' status, [Congress] determines the reach of military jurisdiction based not upon a person's military membership, but rather on the conduct the defendant is accused of committing . . . ."). The Supreme Court, however, has already concluded that, consistent with the Constitution, Congress may authorize trial by military commission of enemy combatants accused of law of war violations. See Ex parte Quirin, 317 U.S. 1, 28-31 (1942); see also Hamdan I, 548 U.S. at 636 ("Nothing prevents the President from returning to Congress to seek the authority he believes necessary [to create military commissions].") (Breyer, J., concurring); W. Winthrop, Military Law and Precedent 831 (rev. 2d ed. 1920) ("[I]n general, it is those provisions of the Constitution which empower Congress to 'declare war' and 'raise armies,' and which, in authorizing the initiation of war, authorize the employment of all necessary and proper agencies for its due prosecution, from which this tribunal derives its original sanction."). See generally U.S. Const., Art. I, § 8 cl. 9 (Congress may "define and punish . . . Offenses against the Law of Nations"). The fact that Congress did so here, then, raises no substantial constitutional question.

See Al Odah, 593 F. Supp. 2d at 60.[11]

* * * * *

By this decision, the Court does not ignore the challenges Khadr asserts in his second amended habeas petition. Indeed, as he states, "[t]he public has a substantial interest in ensuring that Guantánamo detainees are tried in a fair and constitutionally adequate forum." Pet'r's Stay Reply at 16. But "[t]here is no substantial public interest at stake in this case that distinguishes it from the multitude of criminal cases for which post-judgment review of procedural and jurisdictional decisions has been found effective." Khadr II, 529 F.3d at 1118; see also id. (the interest in ensuring that a criminal proceeding is just "does not warrant our interruption of this criminal proceeding just because it is a military commission"). Khadr's "claims of unlawfulness . . . are all claims that should or must be decided in the first instance by the Military Commission, and then raised before the D.C. Circuit, as necessary, on appeal." Hamdan II, 565 F. Supp. 2d at 136. Accordingly, Khadr's second amended habeas petition warrants Councilman abstention.

## III.

For the foregoing reasons, the Court will grant Khadr's motion for leave to file a second amended habeas petition, but will deny his motion to lift the stay. A separate Order accompanies this Memorandum Opinion.

---

[11] To the extent that Khadr is arguing that the military has incorrectly classified him as an enemy belligerent, "that argument may be fully addressed by the military commissions in the first instance, and then addressed, if necessary, by this Court [in habeas proceedings] following the conclusion of the military commission proceedings." Al Odah, 593 F. Supp. 2d at 60. Nor will Khadr be irreparably harmed by permitting the military commission to fully adjudicate the charges against him in the first instance. See Al Odah, 593 F. Supp. 2d at 58; cf. Younger v. Harris, 401 U.S. 37, 46 (1971) (no injunction against state criminal proceeding even if defendant believes statute he is prosecuted under is unconstitutional).

                                            /s/ John D. Bates
                                                JOHN D. BATES
                                          United States District Judge

Dated: July 20, 2010